## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

2018 MAY 31 PM 3: 26

UNITED STATES OF AMERICA *ex rel.*

JOHN N. KRAMER, D.D.S.
9 N 4ᵗʰ Street
Martins Ferry, Ohio 43935

BRINGING THIS ACTION ON
BEHALF OF THE UNITED STATES
OF AMERICA

c/o    Hon. Benjamin C. Glassman
       United States Attorney
       221 E. Fourth Street, Suite 400
       Cincinnati, OH 45202

and    Hon. Jefferson B. Sessions
       Attorney General of the United
       States
       Department of Justice
       950 Pennsylvania Avenue, NW
       Washington, DC 20530-0001

       *Plaintiff and Relator,*

               v.

Robert A. Doyle, Jr., D.M.D.
2700 Sunset Boulevard
Steubenville, OH 43952

       and,

Complete Dental Care of Calcutta by
Robert Doyle, D.M.D., LLC
48853 Calcutta Smithferry Road
East Liverpool, OH 43920

       Agent: Robert Doyle, D.M.D.
       2700 Sunset Boulevard
       Steubenville, OH 43952

(*Additional Defendants listed on next page*)

1: 18 C V 3 7 3

**COMPLAINT**

J. DLOTT

***Filed Under Seal Pursuant
to 31 U.S.C. § 3730(b)(2)***

***Do Not Serve***
***Do Not Put On PACER***

Complete Dental Care of Dennison by     :
Robert Doyle, D.M.D., LLC     :
401 Grant Street     :
Dennison, OH  44621     :
    :
    Agent: Robert Doyle, D.M.D.     :
    2700 Sunset Boulevard     :
    Steubenville, OH 43952     :
    :
    and,     :
    :
Complete Dental Care of Martins Ferry by     :
Robert Doyle, D.M.D., LLC     :
317 North Zane Highway     :
Martins Ferry, OH  43935     :
    :
    Agent: Robert Doyle, D.M.D.     :
    2700 Sunset Boulevard     :
    Steubenville, OH 43952     :
    :
    and,     :
    :
Complete Dental Care of Newcomerstown by     :
Robert Doyle, D.M.D., LLC     :
110 South River Street     :
Newcomerstown, OH  43832     :
    :
    Agent: Robert Doyle, D.M.D.     :
    2700 Sunset Boulevard     :
    Steubenville, OH 43952     :
    :
    :
Complete Dental Care of Shadyside by     :
Robert Doyle, D.M.D., LLC     :
3775 Central Avenue     :
Shadyside, OH  43947     :
    :
    Agent: Robert Doyle, D.M.D.     :
    2700 Sunset Boulevard     :
    Steubenville, OH 43952     :
    :
    and,     :
    :
*(Additional Defendant listed on next page)*     :

ii

Complete Dental Care of Steubenville by    :
Robert Doyle, D.M.D., LLC    :
2700 Sunset Boulevard    :
Steubenville, OH  43952    :
    :
       Agent: Robert Doyle, D.M.D.    :
            2700 Sunset Boulevard    :
            Steubenville, OH 43952    :
    :
       *Defendants.*    :
    :

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 3

III.    PARTIES ............................................................................................................. 3

IV.     FEDERALLY FUNDED MEDICAID PROGRAM ........................................ 6

    A.    Ohio Medicaid Program ............................................................................ 8

    B.    Ohio Medicaid Reimbursement Criteria ................................................ 10

    C.    Ohio Medicaid Covered Dental Services .............................................. 12

    D.    Ohio Medicaid Documentation Requirements ...................................... 13

    E.    Ohio Medicaid Prior Authorization Requirements ............................... 13

    F.    Ohio Medicaid Payment Rates and Prior Authorization Requirements for Endodontic Therapy (Root Canals) and Other Dental Treatments ................................... 14

V.      DEFENDANTS' PRACTICE OF PROVIDING MEDICALLY UNNECESSARY DENTAL SERVICES TO OHIO MEDICAID BENEFICIARIES ........................................... 16

    A.    Dr. Kramer Begins Treating Defendants' Former Patients ................... 16

    B.    Example Patient 1 ................................................................................... 17

    C.    Example Patient 2 ................................................................................... 30

    D.    Example Patient 3 ................................................................................... 32

    E.    Dr. Kramer Learns of the Financial Pressures Defendants Place on Employees ................. 36

    F.    Complete Dental Care's Egregious Proposal to Perform Dental Care That Was Not Medically Necessary on a Child, Patient 4 ................................... 39

    G.    Dr. Kramer Learns Other Local Dentists Have Seen Similar Issues with Former Patients of Complete Dental Care ........................................... 40

VI.     COMPLETE DENTAL CARE'S FALSE CLAIMS FOR PAYMENT TO THE OHIO MEDICAID PROGRAM FOR FEDERAL FUNDS ................................... 40

COUNT ONE .......................................................................................................... 41

COUNT TWO .......................................................................................................... 42

PRAYER FOR RELIEF .......................................................................................... 43

## I.    INTRODUCTION

1.    This is an action brought by Relator John N. Kramer on behalf of the United States to recover damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* resulting from the Defendants Dr. Robert Doyle and Complete Dental Care's presentation of false or fraudulent claims for United States funds for medically unnecessary dental services.

2.    Defendants knowingly provide medically unnecessary dental care to get higher financial reimbursement from Ohio Medicaid, instead of tailoring dental care to their patients' medical needs. Defendants primarily do this by knowingly performing unnecessary and/or poor-quality root canals. Defendants also knowingly provide the highest paying dental services regardless of what their patients want or need.

3.    Defendants' False Claims Act violations began on or before 2015 and are ongoing to the present.

4.    Defendants' fraudulent conduct occurs at six dental offices in Ohio. All do business collectively as Complete Dental Care.

5.    Defendants carry out their fraud scheme in several different ways, such as by:

- Performing medically unnecessary endodontic therapy, also known as root canal therapy, on teeth that did not require such work;

- Performing medically unnecessary root canals on grossly decayed teeth that actually require complete extraction and removal; and

- Only offering patients the highest reimbursing treatment option and failing to offer patients lower cost treatment alternatives, even though under the Ohio Medicaid Program's regulations, only the lowest-cost alternative that effectively addresses and treats the medical problem is medically necessary and thus covered.

1

All of this is done with little to no regard for medical necessity or concern for patients, and for the purpose of maximizing reimbursement from the federally funded Ohio Medicaid program.

6.      The Ohio Medicaid program reimburses dentists only for medically necessary dental services provided to Medicaid beneficiaries. Defendants bill Ohio Medicaid program for these unnecessary and even harmful services. This conduct violates the False Claims Act, as Defendants present and cause the presentation of materially false claims and false statements to the federally funded Ohio Medicaid program for these medically unnecessary dental services, while representing to the Ohio Medicaid program that these procedures are medically necessary.

7.      Defendants' violations of the Ohio Medicaid program's medical necessity requirements were material to the Ohio Medicaid Program. As Ohio Medicaid providers, Defendants knew this.

8.      Prior to filing this Complaint, Relator provided the United States Attorney for the Southern District of Ohio a written Disclosure Statement of substantially all the material evidence and information in his possession related to the allegations in this Complaint in accord with 31 U.S.C. § 3730(b)(2). The Disclosure Statement includes the work product of Relator's attorneys and was submitted to the Attorney General and to the United States Attorney as potential co-counsel in the litigation pursuant to joint prosecution and common interest privileges. Therefore, this disclosure is confidential and privileged.

9.      There has been no "public disclosure," as that term is defined in the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), of the false claims or allegations herein.

10.     Even if a public disclosure has occurred, Relator is an "original source" pursuant to 31 U.S.C. § 3730(e)(4)(B). Relator voluntarily disclosed to the Government the information on which the allegations or transactions involved in this litigation are based prior to any public disclosure. Additionally, Relator has knowledge that is independent of any such public disclosure

2

and materially adds to any publicly disclosed allegations or transactions, and Relator voluntarily provided this information to the United Stated before filing this action.

## II.    JURISDICTION AND VENUE

11.    This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

12.    This Court has personal jurisdiction over all Defendants pursuant to 31 U.S.C. § 3732(a) because all of the Defendants can be found, reside, transact business, or committed acts proscribed by the False Claims Act within the State of Ohio and the United States.

13.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because at least one defendant transacts business within this district and has committed acts proscribed by the False Claims Act within this district.

## III.    PARTIES

14.    **Relator John N. Kramer, D.D.S.** is a resident of the State of West Virginia, and is a citizen of the United States. Relator Kramer is a doctor of dental surgery licensed in the State of Ohio. He has worked as a doctor of dental surgery since 1986 and currently practices from his office, Drs. Kramer and Associates, Inc. (dba Kramer Family Dental), located at 9 N 4th Street, Martins Ferry, Ohio 43935. Dr. Kramer's family has provided healthcare in the same location since 1929. In addition to his private practice, Dr. Kramer has served as the Chief of Staff of Dental Service at East Regional Hospital, as the Vice President and President of the Eastern Ohio Dental Society, and as a Board Member and Chairman of the Board of the Ohio Dental Association Service Corporation. He has served in various volunteer positions with the Ohio Dental Association and has served as a delegate to the American Dental Association. He has received awards and certifications for his commitment to advancing the practice of dentistry and treating the less fortunate and needy in his community and around the world. Dr. Kramer is a member of the American Dental

3

Association and the Ohio Dental Association. And twice, Dr. Kramer has been called on to testify before legislative subcommittees of the Ohio House of Representatives to explain the importance of Ohio Medicaid's adult dental care coverage, especially in the predominantly rural region in which he practices.

15.     As an actively practicing dentist in Martins Ferry, Ohio, Dr. Kramer has treated former patients of Defendants, and has personal knowledge of medically unnecessary dental procedures performed on these patients by Defendants.

16.     **Defendant Robert A. Doyle, Jr., D.M.D.**, is a doctor of medicine and dentistry and owns several Ohio and Pennsylvania Limited Liability Companies that do business in the State of Ohio and the Commonwealth of Pennsylvania. The principal offices are at 2700 Sunset Boulevard, Steubenville, Ohio, 43952 and 107 Whitaker Street, Homestead, Pennsylvania, 15120. Defendant Robert A. Doyle, Jr., D.M.D. is the owner and registered agent of the six Ohio dental offices named in this Complaint:

- Complete Dental Care of Calcutta by Robert Doyle, D.M.D., LLC;
- Complete Dental Care of Dennison by Robert Doyle, D.M.D., LLC;
- Complete Dental Care of Martins Ferry by Robert Doyle, D.M.D., LLC;
- Complete Dental Care of Newcomerstown by Robert Doyle, D.M.D., LLC;
- Complete Dental Care of Shadyside by Robert Doyle, D.M.D., LLC;
- Complete Dental Care of Steubenville by Robert Doyle, D.M.D., LLC;

Through his operation and management responsibilities to these facilities, Defendant Doyle provides dental services personally and through the employees of his practices to beneficiaries of the federally funded Ohio Medicaid program at these dental offices in Ohio. He also owns and operates additional dental offices in Pennsylvania.

4

17.     Defendant Doyle previously owned a chain of dental practices in the Eastern United States. He sold them, returned to the Steubenville area in Eastern Ohio, and began acquiring dental practices in Eastern Ohio and Western Pennsylvania. He recently organized a Pennsylvania company, Dental Management Systems LLC, to handle mergers and acquisitions of new Complete Dental Care dental offices.

18.     **Defendant Complete Dental Care of Calcutta by Robert Doyle DMD, LLC**, is an Ohio limited liability company doing business in the State of Ohio that was established on December 18, 2017. Its office is located at 48853 Calcutta Smith Ferry Road, East Liverpool, Ohio, 43920. Defendant Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

19.     **Defendant Complete Dental Care of Dennison by Robert Doyle DMD, LLC**, is an Ohio limited liability company doing business in the State of Ohio that was established on June 21, 2017. Its office is located at 401 Grant Street, Dennison, Ohio, 44621. Defendant Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

20.     **Defendant Complete Dental Care of Martins Ferry by Robert Doyle DMD, LLC**, is an Ohio limited liability company doing business in the State of Ohio that was established on August 6, 2014. This defendant also has registered to it the fictitious name of Complete Dental Care by Robert Doyle DMD. Its office is located at 317 North Zane Highway, Martins Ferry, Ohio, 43935. Defendant Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

21.     **Defendant Complete Dental Care of Newcomerstown by Robert Doyle DMD, LLC**, is an Ohio limited liability company doing business in the State of Ohio that was established on June 7, 2017. Its office is located at 110 South River Street, Newcomerstown, Ohio, 43832. Defendant Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

5

22.     **Defendant Complete Dental Care of Shadyside by Robert Doyle DMD, LLC,**
is an Ohio limited liability company doing business in the State of Ohio that was established on
August 31, 2016. Its office is located at 3775 Central Avenue, Shadyside, Ohio, 43947. Defendant
Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

23.     **Defendant Complete Dental Care of Steubenville by Robert Doyle DMD,**
**LLC,** is an Ohio limited liability company doing business in the State of Ohio that was established
on May 24, 2013. This Defendant also has registered to it the trade name of Complete Dental Care
by Robert Doyle DMD. Its office is located at 2700 Sunset Boulevard, Steubenville, Ohio, 43952.
Defendant Robert A. Doyle, Jr., D.M.D. is the owner of and registered agent for this company.

24.     These seven Defendants—Robert A. Doyle, Jr., D.M.D.; Complete Dental Care of
Calcutta by Robert Doyle, D.M.D., LLC; Complete Dental Care of Dennison by Robert Doyle,
D.M.D., LLC; Complete Dental Care of Martins Ferry by Robert Doyle, D.M.D., LLC; Complete
Dental Care of Newcomerstown by Robert Doyle, D.M.D., LLC; Complete Dental Care of
Shadyside by Robert Doyle, D.M.D., LLC; Complete Dental Care of Steubenville by Robert Doyle,
D.M.D., LLC)—have each individually perpetrated and continue to perpetrate the fraud scheme
outlined in this Complaint in all material respects. Though the allegations in this Complaint apply
equally and individually to each Defendant, for convenience the Defendants are collectively referred
to herein as **"Complete Dental Care."**

## IV.     FEDERALLY FUNDED MEDICAID PROGRAM

25.     The Medicaid program was established in 1965 pursuant to 42 U.S.C. § 1396, *et seq.*
Medicaid is a joint federal and state program that provides healthcare benefits for certain groups,
primarily the poor and disabled. Eligible children are also covered. Medicaid is jointly financed by
the Federal Government and by state governments, including Ohio.

26.     Through the Medicaid program, the Federal Government provides funds to the states to provide medical assistance to individuals, including children and aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396-1. Funds for Medicaid are appropriated from the Treasury and are provided to the States. 42 U.S.C. §§ 1396-1, 1396b.

27.     Though funded primarily by the Federal Government, Medicaid programs are administered by the individual states. *See* 42 U.S.C. § 1396a.

28.     Each state establishes its own Medicaid program and, within federal guidelines, determines the amount, duration, and scope of services covered. States must cover certain mandatory benefits and may choose to provide other optional benefits.

29.     States are required to provide dental coverage to Medicaid eligible children. 42 C.F.R. § 411.55; 42 C.F.R. § 441.56(b)(1)(iv), (c)(2).

30.     Ohio is one of only fourteen states that also offers extensive dental coverage for all adult Medicaid beneficiaries, including the Medicaid expansion population. Center for Health Care Strategies, Inc., *Fact Sheet, Medicaid Adult Dental Benefits: An Overview*, at p. 3 (January 1, 2018), *available at* https://www.chcs.org/media/Adult-Oral-Health-Fact-Sheet_011618.pdf (accessed May 22, 2018).

31.     In submitting claims for payment, all Medicaid providers must certify that the information supplied on their claims is "true, accurate, and complete" that "payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18.

32.     The representations made by providers in claim forms submitted for Medicaid funds influence the States' decision to pay Medicaid funds for the claims submitted.

33.     The representations made by providers and suppliers on provider agreements and on

7

claim forms influence the State of Ohio's decision to pay Medicaid funds for the claims submitted.

34.    Claims for payment for services that lack medical necessity or are provided to maximize reimbursement or profits rather than address patients' needs are materially false claims and false statements.

35.    The Ohio Medicaid program was administered by the Ohio Department of Job & Family Services until July of 2013. Effective in July of 2013, the Ohio Department of Medicaid began administering Ohio's Medicaid program.

### A. Ohio Medicaid Program

36.    Ohio's Medicaid program is implemented under a Medicaid state plan approved by the United States Secretary of Health and Human Services. R.C. 5162.05(A).

37.    To participate in the Ohio Medicaid program and seek payment from this federally funded program, a provider of dental services must be approved for participation, as evidenced by the issuance of a signed Provider Agreement and an Ohio Medicaid Provider Number. Ohio Admin. Code 5160-1-17(A)(4).

38.    A provider agreement is a contract between Ohio and providers of Medicaid covered services. By signing the agreement, providers, including dental providers, agree to comply with the terms of the provider agreement, the Ohio Revised Code, the Ohio Administrative Code, and federal statutes and rules; the provider certifies and agrees, *inter alia*:

   a.    "To render medical services as medically necessary for the patient and only in the amount required by the patient;"

   b.    "[T]o submit claims only for services actually performed;"

   c.    To bill "for no more than the usual and customary fee charged other patients for the same service;"

   d.    "To maintain all records necessary and in such form so as to fully disclose the extent of services provided and significant business transactions." Such records must be maintained for "six years from the date of receipt of payment based upon those records or until any audit initiated within the six year period is completed;"

e. To inform Ohio Medicaid "within thirty days of any changes in licensure, certification, or registration status; ownership; specialty; additions, deletions, or replacements in group membership . . . and address;"

f. "To disclose ownership and control information;" and

g. To disclose information concerning various criminal offenses and sanctions.

Ohio Admin. Code 5160-1-17.2.

39.     In addition, dental providers must meet the applicable provider requirements and standards for their provider type and meet screening requirements and other additional standards set out by Ohio Medicaid. Ohio Admin. Code 5160-1-17(A)(1)–(A)(3).

40.     Claims for payment to the Ohio Medicaid Program for dental services are required to be made through an electronic claims submission process. R.C. 5164.46.

41.     Claims for payment to Ohio Medicaid from dental providers are submitted through electronic data interchange in the 837 Health Care Dental (837D) electronic format or through the Medicaid Information Technology System (MITS) web portal. Ohio Admin. Code 5160-1-19(B)(1)(c), (B)(2).

42.     Claims must be submitted pursuant to the national correct coding initiative and coding standards. Ohio Admin. Code 5160-1-19(C). "Every submitted claim must include the most appropriate code representing each procedure, service, or supply provided." Ohio Admin. Code 5160-1-60(H).

43.     Claims overpaid by Ohio Medicaid are recoverable at the time of discovery and must be refunded within 60 days of discovery with interest. Ohio Admin. Code 5160-1-19(F)(2), (F)(2)(a), 5160-1-25.

44.     Many Ohio Medicaid beneficiaries are enrolled in and receive their Medicaid benefits through federally funded managed care plans. Ohio Admin. Code 5160-26-02(B).

45.     The Department of Medicaid contracts with managed care organizations. These

9

organizations are authorized to provide, or arrange for the provision of, health care services to Medicaid recipients. R.C. 5167.10(A). Some of these managed care plans, called MyCare Ohio plans, contract with the State of Ohio to manage Medicaid benefits for certain dual-eligible Medicaid and Medicare beneficiaries. Ohio Admin Code 5160-58-01(B)(9); 5160-58-02(A).

46.    For every Medicaid beneficiary enrolled in a managed care plan, the plan receives a capitated monthly amount. Ohio Admin. Code 5160-26-09(A)(2). Capitated payments are set annually using a combination of actual cost data and medical cost inflation data. This means that despite the capitated nature of these plans, when managed care plans pay for medically unnecessary services, the amount that the federally funded Medicaid program pays to these plans increases, ultimately causing wasteful and unnecessary expenditures from the Federal Treasury.

47.    Managed care plans can either "provide or arrange for the delivery of covered health care services" through employees or through subcontracts with network providers of health care services. Ohio Admin. Code 5160-26-05(A)(1).

48.    At the direction of the Ohio Department of Medicaid, plans must submit evidence of the provider's current licensure. Ohio Admin. Code 5160-26-05(B)(2)(a).

49.    Managed care plans are required to have a procedure and requirements for the submission of claims (Ohio Admin Code 5160-26-05.1(A)(5)), and to establish controls to ensure proper submission and payment of claims. Ohio Admin. Code 5160-26-06(A)(1)(h).

50.    Managed care plans allow claims to be submitted through web portal, through electronic submission via clearinghouse, by 837 Health Care Dental (837D) electronic file, and by paper American Dental Association Dental Claim Form.

## B. Ohio Medicaid Reimbursement Criteria

51.    Medical necessity is a fundamental concept underlying the Medicaid program. Ohio Admin. Code 5160-1-01. Claims for payment to Ohio Medicaid for dental services are only

10

reimbursable if the service provided is medically necessary. Ohio Admin. Code 5160-1-02(A)(1).

52.     Conditions of medical necessity are met for Medicaid services, including dental

services, when all the following apply to the service:

a.     "Meets generally accepted standards of medical practice;"

b.     "Clinically appropriate in its type, frequency, extent, duration, and delivery setting;"

c.     "Appropriate to the adverse health condition for which it is provided and is expected to produce the desired outcome;

d.     "Is the lowest cost alternative that effectively addresses and treats the medical problem;"

e.     "Provides unique, essential, and appropriate information if it is used for diagnostic purposes;" and

f.     "Not provided primarily for the economic benefit of the provider nor for the convenience of the provider or anyone else other than the recipient."

Ohio Admin. Code 5160-1-01(C).

53.     The scope of what Ohio considers medically necessary varies slightly depending on

the age of the beneficiary:

a.     For children and adults younger than age 21, "medical necessity" is defined as procedures, items, or services that prevent, diagnose, evaluate, correct, ameliorate, or treat an adverse health condition such as an illness, injury, disease or its symptoms, emotional or behavioral dysfunction, intellectual deficit, cognitive impairment, or developmental disability. Ohio Admin. Code 5160-1-14(A)(1), 5160-1-01(A).

b.     For all other Medicaid beneficiaries, "medical necessity" is defined as procedures, items, or services that prevent, diagnose, evaluate, or treat an adverse health condition such as an illness, injury, disease or its symptoms, emotional or behavioral dysfunction, intellectual deficit, cognitive impairment, or developmental disability and without which the person can be expected to suffer prolonged, increased or new morbidity; impairment of function; dysfunction of a body organ or part; or significant pain and discomfort. Ohio Admin. Code 5160-1-01(B).

54.     Besides medical necessity, there are two other relevant requirements that must be

met for a claim for a service to be reimbursable.

55.     First, the beneficiary or their authorized representative must originate the request for

11

the service in order for it to be reimbursable. Ohio Admin. Code 5160-1-02(A)(2).

56.     Second, the service provided must be within the scope of practice of the rendering provider as defined by applicable federal, state, and local laws and regulations in order for it to be reimbursable. Ohio Admin. Code 5160-1-02(A)(5).

57.     These same coverage and medical necessity criteria also apply to claims to Managed Care Plans (Ohio Admin. Code 5160-26-03(A)(4)) and to MyCare Ohio Plans. Ohio Admin. Code 5160-58-03(A)(4).

### C. Ohio Medicaid Covered Dental Services

58.     To be eligible to provide covered dental services, a provider must be either:

    a.  A dentist practicing in Ohio; or

    b.  A dentist practicing in a state other than Ohio who meets the requirements
        established by the dental examining board in that state.

Ohio Admin. Code 5160-5-01(C)(1)(a), (C)(1)(b). Under Ohio Law, no person is permitted to "practice dentistry without a current license from the state dental board." R.C. 4715.09(A). However, a dentist may use the services of a person unlicensed in Ohio pursuant to a written work authorization on a form prescribed by the Ohio State Dental Board. R.C. 4715.09(B).

59.     Appendix A to Ohio Administrative Code 5160-5-01 lists Medicaid-covered dental services, limitations on quantity and frequency of such services, any conditions or restrictions on such services, and whether prior authorization must be obtained for such service to be covered. Ohio Admin. Code 5160-5-01(D) & Appendix A.

60.     Appendix B to Ohio Administrative Code 5160-5-01 provides the payment rate for covered dental services. For covered dental services identified by current dental terminology ("CDT") codes, payment amounts are the lesser of the submitted charge or the amount listed in Appendix B—expect for providers with addresses in rural Ohio counties, for which payment is the lesser of the submitted charge or 105% of the amount listed in Appendix B. Ohio Admin. Code

12

5160-5-01(F)(1). For covered dental services identified by a current procedural terminology ("CPT") code, payment is the lesser of the submitted charge or the amount listed in Appendix DD to Ohio Administrative Code 5160-1-60, regardless of the provider's address. Ohio Admin. Code 5160-5-01(F)(2).

### D. Ohio Medicaid Documentation Requirements

61.    Medicaid providers must "keep such records as are necessary to establish that conditions of payment for [M]edicaid covered services have been met, and to fully disclose the basis for the type, frequency, extent, duration, and delivery setting of services provided to [M]edicaid recipients . . ." These records must be produced on request to Ohio Medicaid and other listed agencies. Ohio Admin. Code 5160-1-27(A).

62.    Additional documentation requirements and dental services rendered to persons living in long term care facilities, or other supervised residences. Ohio Admin. Code 5160-5-01(E)(3). For these patients, dental records and signed requests for treatment must be sent to their residence facility. Ohio Admin. Code 5160-5-01(E)(3)(a), (E)(3)(b).

63.    Managed care plans have documentation preservation requirements as well. *See* Ohio Admin. Code 5160-26-05.1(A)(4).

### E. Ohio Medicaid Prior Authorization Requirements

64.    Ohio Medicaid requires that providers obtain prior authorization for coverage of some services and items. Ohio Admin. Code 5160-1-31(A). In such cases, reimbursement "is available only upon obtaining prior authorization," which must be obtained "before the services are rendered or the items delivered," by a request submitted through the MITS web portal. *Id.* at 5160-1-31(A), (C).

65.    After submitting a prior authorization request, the provider receives notification of the decision for each service. *Id.* at 5160-1-31(D). "Only those services, supplies or prescription

drugs approved in the prior authorization notice will be reimbursed." *Id.* at 5160-1-31(D).

66.    Reimbursement may be sought after the fact, but only where "the provider considers a delay in providing services, supplies or prescription drugs requiring prior authorization to be detrimental to the health of the consumer . . . ." *Id.* at 5160-1-31(F).

67.    Medicaid payment is not allowed for covered procedures, services, or supplies that are denied by the department as a result of the prior authorization process. Ohio Admin. Code 5160-1-60(G).

68.    For persons living in long term care facilities, or other supervised residences, copies of requests for treatment as signed by the patient, the patient's authorized representative, or the patient's treating physician must be submitted with the prior authorization. Ohio Admin. Code 5160-5-01(E)(3)(c). And prior authorization requests for complete or partial dentures for residents of long term care facilities must be accompanied by:

      a.   "A copy of the resident's most recent nursing care plan;"

      b.   "A copy of a consent form signed by the resident or the resident's authorized representative; and"

      c.   "A dentist's signed statement describing the oral examination and assessing the resident's ability to wear dentures."

Ohio Admin. Code 5160-5-01(E)(3)(d).

69.    Managed Care Plans also have prior authorization requirements. *See* Ohio Admin. Code 5160-26-05.1(A)(2), (A)(2)(a). When MyCare Ohio plans have placed a predetermined limit on certain services, prior authorization may also be sought to ensure that the "limitation may be exceeded when medically necessary." Ohio Admin. Code 5160-58-03(A)(3).

## F.    Ohio Medicaid Payment Rates and Prior Authorization Requirements for Endodontic Therapy (Root Canals) and Other Dental Treatments

70.    When a patient has a sore tooth, the pain is often caused by tooth decay. The dentist removes the decayed tooth material, cleans the affected area, and fills the cleaned-out cavity with a

filling. When the decay has damaged a large amount of the tooth, a crown or cap may be necessary. When the decay has reached the nerve inside the tooth, endodontic therapy—or as it is commonly called, a root canal—is needed to remove the damaged nerve. But if the tooth is very badly damaged, complete extraction of the tooth and the provision of a replacement denture is necessary.

71.     Ohio Medicaid and most managed care providers require no prior authorization for fillings and endodontic therapy (*i.e.* root canals). Ohio Admin. Code 5160-5-01(F)(1), Appendix A at p. 5, 7. An exception is the managed care provider, Caresource, which allows up to three scheduled root canals per patient in a six-month period without prior authorization. Additional root canals require prior authorization.

72.     Even though prior authorization is not required for root canals, Ohio Medicaid only covers them when certain requirements are met:

> **Endodontic therapy is covered only when the overall health of the teeth and periodontium is good except for the indicated tooth or teeth.** Decay must be above the bone level. **The patient must experience chronic pain** (as evidenced by sensitivity to hot or cold or through percussion or palpation), or there must be a fistula present that is associated with the tooth infection or chronic systemic infection. Images must be clearly readable labeled, and properly mounted, and must show periapical radiolucency or widening of the periodontal ligament. **If pathology is not visible on an image, then the need for endodontic treatment must be substantiated by clinical documentation.** Payment includes all diagnostic tests, evaluations, images, and postoperative treatment.

Ohio Admin. Code 5160-5-01(F)(1), Appendix A at p. 7 (emphasis added).

73.     The amount that Ohio Medicaid pays for endodontic therapy depends on which tooth is being treated. Anterior teeth, which are in the front of the mouth, are reimbursed the least amount of money, $247.63 per tooth. A root canal of a bicuspid tooth is reimbursed $298.10. And a root canal of a molar is reimbursed $379.02 by Ohio Medicaid. Ohio Admin. Rule 5160-5-01, Appendix B, p. 1.

74.     Additionally, restorations such as fillings or crowns are billed separately from endodontic treatment. Fillings are reimbursed less than root canals by Ohio Medicaid and managed

15

care plans. For example, for cleaning out one surface on a decayed anterior (front) tooth and filling the tooth with composite resin, Ohio Medicaid will reimburse $51.21. And for cleaning out one surface on a decayed posterior (back) tooth, typically a molar, and filling the tooth, Medicaid pays $40.00 for an amalgam (silver based) filling or $51.21 for a composite resin filling. Ohio Admin. Rule 5160-5-01, Appendix B, p. 1.

75.      Ohio Medicaid and managed care providers do require prior authorization for certain procedures, specifically: all type of porcelain crowns, complete and partial dentures, certain periodontal procedures and surgical extractions of complete bone impactions. The dental provider must submit a periapical image (x-ray), of the involved tooth with the prior authorization request. Ohio Admin. Rule 5160-5-01, Appendix A, p. 5.

76.      Prior authorization is not required for extractions of teeth (with the exception of complete bone impaction), and Ohio Medicaid pays $57.69 per extracted tooth. Ohio Admin. Rule 5160-5-01, Appendix A, p. 11, Appendix B, p. 2. But prior authorization is required for dentures to replace extracted teeth. Ohio Admin. Rule 5160-5-01, Appendix A, p. 9. Ohio Medicaid will pay $540.25 for a partial denture and $400.00 for a complete denture. Ohio Admin. Rule 5160-5-01, Appendix B, p. 2.

## V.      DEFENDANTS' PRACTICE OF PROVIDING MEDICALLY UNNECESSARY DENTAL SERVICES TO OHIO MEDICAID BENEFICIARIES

### A.  Dr. Kramer Begins Treating Defendants' Former Patients

77.      Through his Martins Ferry, Ohio dental practice, Dr. Kramer sees and treats Ohio Medicaid beneficiaries, as well as self-pay patients and individuals with commercial dental insurance.

78.      In early 2015, Dr. Kramer began to see and treat former patients of Defendants' practices. At first, most former Complete Dental Care patients Dr. Kramer saw were non-Medicaid patients. These patients told similar stories.

16

79. The patients said they had been going to Dr. Harry Mowder, but after Dr. Mowder sold his practice and it became the Martins Ferry office of Complete Dental Care, they were suddenly told by Complete Dental Care that they needed extensive dental work.

80. These patients had similar stories of being presented with expensive treatment plans—despite often having been under the care of Dr. Mowder for years beforehand. No options for lower-cost alternative services were provided, and the patients said Complete Dental Care subjected them to a high-pressure sales pitch, telling them that if expensive work was not done, significant dental problems would be forthcoming.

81. These patients had some work done by Complete Dental Care, but were dissatisfied with the results, unhappy with the way they were treated, and sought second opinions from Dr. Kramer.

82. Dr. Kramer then began to see patients from Complete Dental Care who were Medicaid recipients. At first, he believed that Complete Dental Care's treatments, such as multiple root canals on severely decayed teeth, were at minimum very questionable. But when he saw a Medicaid patient on April 9, 2018 who had received multiple unnecessary root canals, Dr. Kramer's suspicions were confirmed that Complete Dental Care was performing medically unnecessary procedures on patients and was depriving patients of their right to be presented with and select less expensive but still clinically appropriate treatment options.

**B. Example Patient 1**

83. The first problematic former Complete Dental Care patient seen and treated by Dr. Kramer was Patient 1. Patient 1 is a Medicaid beneficiary who previously received dental services at Defendant Complete Dental Care of Martins Ferry by Robert Doyle, D.M.D., LLC. However, on February 15, 2018, Patient 1 came to Dr. Kramer's office for a second opinion to discuss treatment options for Patient 1's lower jaw after being told by Complete Dental Care that all of Patient 1's

17

remaining lower teeth needed extraction and removal and a complete denture made, even though Complete Dental Care performed root canal therapy on these teeth a few years ago.

84. Patient 1 told Dr. Kramer that Complete Dental Care had given her numerous root canals in a short period of time. Reviewing an x-ray, Dr. Kramer observed that Patient 1 had received seven root canals on the anterior (front) teeth—five in the lower jaw, and two in the upper jaw. These root canals were of very poor quality. Subsequent records received by Dr. Kramer showed patient had these seven root canals over three months.

85. To explain the problem with Patient 1's root canals, discussion of root canal therapy follows:

 a. In a tooth, the nerve and blood supply are located in a canal. The root canal is essentially a pipe inside the tooth that also contains blood vessels and tissue, as seen on this image:[1]



---

[1] Siler, Heather, *The Anatomy of a Tooth* (April 13, 2016), available at https://microcopydental.com/blog/entry/the-anatomy-of-a-tooth (accessed May 29, 2018).

b. Endodontic therapy, which is commonly called root canal therapy or a root canal procedure, is medically necessary when the tooth is severely damaged. Such damage is often caused by decay or trauma, often causing the nerve and/or blood supply to die. This often results in pain and/or infection. Here is a graphical image illustrating an example of an infected tooth:[2]



c. When a patient complains of pain in a tooth, a dentist can determine if a root canal is needed with a few tests. An x-ray is often used to diagnose nerve death. Additionally, other tests can be used to evaluate the health of the nerve, such as a percussion test, electrical impulse test, or thermal test. If a root canal is necessary, positive results to these tests should be documented in the dentist's clinical notes.

d. If after performing these tests it is still unclear whether a root canal is necessary, the dentist can allow the patient some time to heal, can prescribe medication, or can refer the patient to an endodontist.

e. If dentist and patient decide to proceed with a root canal, the dentist first numbs the patient's tooth. When the patient is sufficiently numb, the dentist makes a small

---

[2] Noakes Endodontics, Noakes Endodontics website illustration 1 (accessed May 30, 2018), available at https://www.noakesendo.com/non-surgical-root-canal-therapy.html.

opening in the tooth. The dentist then uses a device such as an apical locator to measure the length of the canal, which is the pipe inside the tooth, and cleans out the canal with a hand and rotary instrument. These steps are illustrated in this image:[3]



f.  Then the dentist irrigates the canal with different medicaments, in an attempt to "sterilize" the canal. Then the canal is sealed with a rubber-like product called gutta-percha. A temporary filling or crown is placed on the tooth until a permanent crown can be placed. These steps are illustrated in the following images:[4]




----

[3] Noakes Endodontics, Noakes Endodontics website illustration 2 (accessed May 30, 2018), available at https://www.noakesendo.com/non-surgical-root-canal-therapy.html. Note that the abscess has switched sides to the other root in this image.

[4] Noakes Endodontics, Noakes Endodontics website illustrations 3 and 4 (accessed May 30, 2018) (text box pointing to permanent crown added), available at https://www.noakesendo.com/non-surgical-root-canal-therapy.html.

g. Timing of the process depends on the location of the tooth, difficulty encountered, and the number of canals. But significantly less time is taken to perform a root canal procedure on front teeth than on back molar teeth.

86. The root canal procedure can save a tooth when the tooth itself is not badly decayed. Due to the extent of damage, severely decayed teeth often cannot be saved with root canal therapy and need to be extracted.

87. Properly done and properly cared-for, root-canal therapy can last for a lifetime.

88. In contrast, the root canals completed by Complete Dental Care are often not properly done and have a very questionable prognosis. Dr. Kramer observed that the endodontic fill—which is the rubber-like filling which seals the tooth following a root canal—in Patient 1's teeth was uneven and poorly filled. This can be seen in Complete Dental Care's July 24, 2017 x-ray of Patient 1:



73kV 10mA 12s 73mGy*cm2    24JUL2017 11:44

21

89.     A poor endodontic fill can lead to recurrent infection, pain and swelling, failure of the root canal, and potentially loss of the tooth.

90.     By way of comparison, a well-sealed root canal is shown as follows:



91.     Patient 1 told Dr. Kramer that Complete Dental Care had not given any treatment options other than root canal therapy.

92.     When extensive decay dictates root canal therapy, another option that is often better and should be presented to the patient is extraction of that tooth. The patient can then decide what option is best for them.

93.     While root canals do not require prior authorization, extractions result in patients needing dentures to replace the missing teeth. If Patient 1 had been provided with both options and had chosen extraction, then a prior authorization could be submitted to Medicaid for a removable appliance such as a partial denture.

94.     Patient 1 obtained medical records from Complete Dental Care. These records were missing pre-operative x-rays that Complete Dental Care was required to have taken prior to Patient

1's root canals. Ohio Admin. Code 5160-5-01(F)(1), Appendix A at p. 7.[5] They also poorly document the care Patient 1 received from Complete Dental Care.

95.     Nevertheless, Complete Dental Care's medical records show that on August 4, 2015, it began providing Patient 1 with a series of root canals. On that day, Patient 1 received multiple fillings and three root canals on teeth numbers 21, 23, and 24. Patient 1 also received temporary crowns on teeth numbers 23 and 24.

96.     There is no clinical documentation in Patient 1's medical records indicating the need for root canal therapy. This is required by Ohio Medicaid as a coverage prerequisite for root canals. Ohio Admin. Code 5160-5-01(F)(1), Appendix A at p. 7.

97.     Nor did Complete Dental Care provide Patient 1 with a copy of the preoperative x-ray of those teeth from before the root canals that should have indicated a need for root canal therapy, even though it is required to both maintain such records and provide them on request. Ohio Admin. Code 5160-1-17.2(D), 5160-1-27(A); RC 3701.741. Nevertheless, these three root canals and the permanent crowns later attached to teeth numbers 23 and 24 can be seen on Patient 1's later July 24, 2017 x-ray. Note that the crown on tooth number 23 has fallen off on this x-ray.

---

[5] Complete Dental Care was certainly required to maintain these records. Ohio Admin. Code 5160-1-17.2(D), 5160-1-27(A). And Complete Dental Care's failure to provide them to Patient 1 violated RC 3701.741.



73kV 10mA 12s 73mGy*cm2   24JUL2017 11:44

98.     On September 25, 2015, Patient 1 went back to Complete Dental Care's office to
have permanent crowns affixed to teeth numbers 23 and 24.

99.     Shortly thereafter, on November 2, 2015, Patient 1 had to return because the
permanent crown on tooth number 23 had fallen off, just one month after its placement. During the
same visit, Complete Dental Care's medical record for Patient 1 states that: "PT HAS SOME PAIN
WITH LOWERS, POINTS TO #22, 25… ROOT CANAL TREATMENT."

100.    There is no clinical documentation in Patient 1's medical records to support
Complete Dental Care's assessment that these teeth needed root canal therapy.

101.    Nor did Complete Dental Care provide Patient 1 with a copy of the preoperative x-
ray of those teeth from before the root canals. These root canals on teeth numbers 22 and 25 can be
seen on the July 24, 2017 x-ray:



102.    While Complete Dental Care's medical records indicate that these root canals on teeth numbers 22 and 25 were performed on November 2, 2015, Complete Dental Care's payment ledger records billing the Ohio Medicaid Program for these root canals lists a service date of November 9, 2015.

103.    According to its clinical notes and payment ledger for Patient 1, Complete Dental Care filled teeth numbers 22 and 25 immediately following the root canals. Later, on September 30, 2016, Complete Dental Care placed permanent crowns on those teeth.

104.    On November 9, 2015, Complete Dental Care then performed two more root canals on teeth numbers 10 and 11.

105.    Once again there is no clinical documentation in Patient 1's medical records indicating that these root canals were necessary. Nor did Complete Dental Care provide Patient 1

25

with a copy of a preoperative x-ray of those teeth from before the root canals. These root canals are also seen on the July 24, 2017 x-ray.



106.    Thus, in the span of three months over three appointments, Complete Dental Care performed seven root canals on Patient 1. This is an extraordinary number of root canals in such a short time frame.

107.    While Patient 1's home care had previously been reported as "FAIR," by a November 30, 2015 appointment, Patient 1's home care had improved to "GOOD." Nevertheless, at a later May 1, 2017 appointment, Complete Dental Care reported that "On pt's x-ray there is active infection showing on #20–27 has large areas of infection surrounding the apex of the teeth."

108.    Patient 1 was then told that she needed teeth "#20-27 EXT[RACTED] and Lower partial" and yet another root canal on tooth number 7.  So in a span of less than two years,

26

Complete Dental Care extensively treated eight of Patient 1's lower teeth, only to then diagnose them for removal.

109.   Even though the medical records state that Complete Dental Care's providers "Reviewed options +/- all alternatives and allowed pt to choose desired treatment," Patient 1 insisted that no alternatives to these root canals were discussed, let alone the option to have the teeth extracted and to receive a partial denture. Rather, Patient 1 was simply told that root canals were needed.

110.   When teeth are badly decayed, extraction and a partial denture is often the best option. It is also ultimately less expensive to Medicaid, potentially easier on the patient, carries less risk of further infection, and is a predictable long-term solution.

111.   Given the treatment history and given the condition of these teeth as reported on July 24, 2017 and as seen on the x-ray taken that same day, Patient 1 should have been offered the option of having her extracted and replaced with a partial denture instead of just being told that she required root canals.

112.   Medicaid reimburses nearly $200.00 more per root canal than for an extraction to remove the tooth. And no preauthorization is required for a root canal, as would be required for a partial denture to replace an extracted tooth. That means that Complete Dental Care could immediately perform the root canal service and receive a guaranteed higher reimbursement than if they had extracted the teeth and sought prior authorization for a partial denture, which might not have been granted.

113.   Given the poor and infected condition of Patient 1's teeth and Patient 1's desires, Dr. Kramer had to extract teeth numbers 21 to 25, on which Complete Dental Care previously performed root canals, and is currently in the process of making a partial denture for Patient 1.

114.   Complete Dental Care's claims for payment for root canal therapy and related

treatments to the Ohio Medicaid Program for teeth numbers 21, 22, 23, 24, and 25 for Patient 1 were false because they did not satisfy Medicaid reimbursement prerequisite standards due to lack of medical necessity. Ohio Admin. Code 5160-1-02(A)(1), 5160-1-01(C). Under the Ohio Medicaid Program's prerequisite billing standards, root canal therapy and related treatments were not medically necessary for several reasons. *Id.* First, the root canal therapy did not meet generally accepted standards of medical practice due to their poor quality. Second, root canal therapy was not the lowest cost alternative to effectively address and treat Patient 1's medical problem because these teeth were compromised and of questionable prognosis. Complete Dental Care knew or should have known that extraction and a partial denture were the lowest cost option and were a viable treatment option. Third, the option for extraction, which would have been the medically preferred option, was not presented to Patient 1. Therefore, the root canals were provided primarily for the economic benefit and convenience of the provider.

115. Complete Dental Care submitted false claims for payment to the Ohio Medicaid Program for root canal therapy and related treatments performed on Patient 1 on August 4, 2015 and November 2, 2015 and was paid with federally funded Medicaid dollars for these false claims, as detailed on the following chart.

| Date of Service Reported to Ohio Medicaid Program | Tooth Number | Code and Description of Medically Unnecessary Service | Amount Paid by Ohio Medicaid Program |
|---|---|---|---|
| 8/4/2015 | 21 | D2392 RESIN-BASED COMPOSITE-TWO SURFACE, POST. | $54.00 |
| 8/4/2015 | 21 | D3320 BICUSPID (EX. FINAL RESTORATION) | $298.10 |
| 8/4/2015 | 23 | D02330 RESIN-ONE SURFACE, ANTERIOR | $51.21 |
| 8/4/2015 | 23 | D03310 ANTERIOR (Ex. FINAL RESTORATION) | $247.63 |
| 8/4/2015 | 24 | D2330 RESIN-ONE SURFACE, ANTERIOR | $51.21 |

28

| Date of Service Reported to Ohio Medicaid Program | Tooth Number | Code and Description of Medically Unnecessary Service | Amount Paid by Ohio Medicaid Program |
|---|---|---|---|
| 8/4/2015 | 24 | D3310 ANTERIOR (EX. FINAL RESTORATION) | $247.63 |
| 9/25/2015 | 23 | D2752 CROWN-PORCELAIN FUSED TO NOBLE METAL | $427.29 |
| 9/25/2015 | 24 | D2752 CROWN-PORCELAIN FUSED TO NOBLE METAL | $427.29 |
| 11/9/2015 | 22 | D02335 RESIN-FOUR OR MORE SURFACES, ANTERIOR | $94.95 |
| 11/9/2015 | 22 | D3310 ANTERIOR (EX. FINAL RESTORATION) | $247.63 |
| 11/9/2015 | 25 | D2335 RESIN-FOUR OR MORE SURFACES, ANTERIOR | $94.95 |
| 11/9/2015 | 25 | D3310 ANTERIOR (EX. FINAL RESTORATION) | $247.63 |
| 9/30/2016 | 22 | D2752 CROWN-PORCELAIN FUSED TO NOBLE METAL | $427.29 |
| 9/30/2016 | 25 | D2752 CROWN-PORCELAIN FUSED TO NOBLE METAL | $427.29 |
| **Total Amount Paid By Ohio Medicaid Program for Complete Dental Care's False Claims:** | | | **$3,344.10** |

116.    Thus, Complete Dental Care was paid $3,344.10 with federally funded Medicaid dollars for these non-medically necessary treatments for which Patient 1 was offered no alternative choice.

117.    The additional work to extract teeth numbers 21 to 25 that Complete Dental Care eventually recommended and is now necessary will likely cost the Ohio Medicaid program $690.00 more.

118.    Had Patient 1 been a single outliner, Dr. Kramer would have been concerned but not alarmed about systemic wrongdoing at Complete Dental Care, but then he began to see other former Complete Dental Care patients presenting even more egregious care failures.

## C. Example Patient 2

119.    Patient 2 is also a Medicaid beneficiary, who previously received dental services at Complete Dental Care of Steubenville by Robert Doyle, D.M.D., LLC. However, on March 28, 2018, Patient 2 came to Dr. Kramer's office for treatment.

120.    Patient 2 told Dr. Kramer that Patient 2 had originally gone to Complete Dental Care and had asked to have all remaining teeth extracted in the winter of 2017/2018. Patient 2 stated that no options for treatment were provided by Complete Dental Care. Rather, Patient 2 was told that they were going to do root canals on the "front teeth." Patient 2 protested, telling Complete Dental Care that Patient 2 wanted them "all out." At this, the dentist became upset and "threw instruments on the table" according to Patient 2.

121.    Complete Dental Care did extract a "few back teeth" according to Patient 2, but refused to extract all of Patient 2's maxillary (upper) teeth, including Patient 2's six remaining upper teeth. Complete Dental Care then performed root canals on Patient 2's upper front teeth instead, even though Complete Dental Care could not have expected these root canals to produce the required outcome.

122.    Patient 2 should have been provided with the clinically appropriate option of having all remaining maxillary teeth extracted as Patient 2 desired. In addition, Patient 2 should have been presented with the option of having the four badly decayed anterior maxillary teeth removed and to have prior authorization sought to receive partial dentures.

123.    On May 10, 2018, Dr. Kramer confirmed with Patient 2 that Complete Dental Care had given no options other than the root canals.

124.    The Ohio Medicaid program did not approve Complete Dental Care's prior authorization request for the four crowns after the root canals had been performed.

30

125.    After hearing this medical history, Dr. Kramer took an x-ray of Patient 2's teeth on March 28, 2018. These root canals can be seen on Patient 2's grossly decayed four anterior maxillary teeth, teeth numbers 7–10:



126.    These four teeth, numbers 7–10, are so grossly decayed that root canals were not appropriate without adding permanent crowns to these teeth as well. Performing the root canals without subsequently adding permanent crowns was not appropriate treatment and added unnecessarily to the cost of Patient 2's care with no benefit to Patient 2—especially since Patient 2 did not want this treatment.

127.    Performing root canal therapy only delayed extracting Patient's 2 teeth numbers 7 to 10, wasting Medicaid dollars. Patient 2 needed a maxillary partial denture with or without saving the four front teeth. Those teeth could have easily been extracted and added to the partial denture.

128.    Thus, Complete Dental Care submitted false claims for payment for federal funds by making false claims for payment for these four root canals to the Ohio Medicaid Program, for which Complete Dental Care was paid approximately $247.63 per root canal, or $990.52 for all four teeth.

129.    Complete Dental Care's claim for payment for Patient 2's root canals on teeth

31

numbers 7–10 were false because they did not satisfy Medicaid reimbursement prerequisite standards due to lack of medical necessity. Ohio Admin. Code 5160-1-02(A)(1), 5160-1-01(C). Under the Ohio Medicaid Program's prerequisite billing standards, these root canals and related treatments were not medically necessary for several reasons. *Id.* First, the root canals did not meet generally accepted standards of medical practice due to their poor quality and because they were not medically appropriate for Patient 2. Second, the root canals were not clinically appropriate for Patient 2's adverse health condition because Complete Dental Care could not have expected them to produce the required outcome. Third, the root canals were not the lowest cost alternative to effectively address and treat Patient 2's medical problem because Patient 2's teeth numbers 7–10 were so badly decayed that they required extraction. Fourth, the option for extraction—which was the medically necessary option—was refused by Complete Dental Care even though Patient 2 requested it. Therefore, the root canals were provided solely for the economic benefit and convenience of the provider, Complete Dental Care.

### D. Example Patient 3

130. On April 9, 2018, Patient 3, another Medicaid beneficiary who previously received dental services at Defendant Complete Dental Care of Martins Ferry by Robert Doyle, D.M.D., LLC, came to Dr. Kramer's office for treatment. This was the most egregious case seen by Dr. Kramer.

131. Discussing medical history, Patient 3 told Dr. Kramer of making an appointment at Complete Dental Care of Martins Ferry for a regular dental check-up in late 2017 or early 2018. Complete Dental Care took x-rays, and then told Patient 3 that root canals were needed on six front teeth to save them.

32

132.     Patient 3 was not experiencing any pain or problem with these teeth. Nor had Patient 3's teeth ever previously caused problems. Patient 3 also denied history of trauma to the front teeth.

133.     While chronic pain, fistula, or systemic infection, as well as radiographic evidence (x-ray) or clinical documentation of these conditions is required for Ohio Medicaid to cover root canal therapy, pain was nonexistent, according to Patient 3. Ohio Admin. Code 5160-5-01, Appendix A at p. 7.

134.     Patient 3 requested medical records from Complete Dental Care, but in violation of RC 3701.741, Complete Dental Care refused to provide Patient 3 with the medical records for Patient's 3 treatment. Complete Dental Care only produced an old x-ray from January 4, 2016 and a set of x-rays that, while undated, were taken after it performed the root canals on Patient 3's teeth.

135.     Dr. Kramer then requested that Complete Dental Care provide clinical notes for Patient 3. But in an email sent May 3, 2018, Complete Dental Care stated "We sent you what we have in our file for above pt," referring to the few x-rays already sent.

136.     If these clinical notes and preoperative x-rays do not exist, then Complete Dental Care is in violation of Medicaid documentation preservation requirements. *See* Ohio Admin. Code 5160-1-17.2(D), 5160-1-27(A).

137.     In Dr. Kramer's experience, it is highly unusual and well below the standard of care that preoperative x-rays were not available showing the condition of Patient 3's teeth prior to root canal treatment and that these were not provided to Patient 3. Again to cover root canals, the Ohio Medicaid program requires that evidence of the need for a root canal to be present in either a pre-operative x-ray or in clinical documentation. Ohio Admin. Code 5160-5-01(F)(1), Appendix A at p. 7. Additionally, clinical notes are required on every patient at every visit. In addition to violating

33

Ohio Medicaid documentation requirements, Complete Dental Care's failure to keep clinical records, claiming to have "sent…what we have in or file" likely constitutes professional malpractice.

138. Patient 3's x-ray from January 4, 2016, below, shows minimal current decay on her six front teeth on which Complete Dental Care later performed root canal therapy. There is no evidence on this x-ray to support either of these procedures.

Six teeth, numbers 6-11, on which Complete Dental Care later performed root canals



139. Usually the medical necessity for a root canal can be seen on an x-ray of the affected tooth. Sometimes root canals are medically necessary due to trauma to the teeth, which might not be immediately evident on an x-ray. But Patient 3 denied experiencing any trauma to the teeth. In addition to its general documentation requirements, Ohio Medicaid specifically requires documentation of pathology requiring root canals when it is not visible on the x-ray image. Ohio

Admin. Code 5160-5-01, Appendix A at p. 7. But according to Complete Dental Care, such clinical notes do not exist.[6]

140. Dr. Kramer's x-ray of Patient 3, taken on April 9, 2018, shows these six poorly performed root canal in teeth numbers 6–11. These root canals are poor quality and so infection could develop in the future, possibly leading to loss of the tooth.[7]

Complete Dental Care root canals on six teeth, numbers 6-11



141. In Dr. Kramer's experience and given the patient's history, there is no medical justification for performing six root canals on this patient at one time in one appointment.

142. Thus, Complete Dental Care submitted false claims for payment for federal funds by making false claims for payment for these six unnecessary root canals to the Ohio Medicaid Program for which Complete Dental Care was paid approximately $247.63 per root canal, or

---

[6] **Exhibit 17**, Complete Dental Care 5/3/2018 email to Dr. Kramer's office.

[7] **Exhibit 18**, Patient 3's 4/9/2018 x-ray by Dr. Kramer.

$1,485.78 in sum. These claims were false because they did not satisfy Medicaid's reimbursement prerequisite standards due to lack of medical necessity. Ohio Admin. Code 5160-1-02(A)(1), 5160-1-01(C). Under the Ohio Medicaid Program's prerequisite billing standards, this root canal therapy and related treatments were not medically necessary for several reasons. *Id.* First, there is no evidence that the root canal therapy Complete Dental Care performed on Patient 3's six teeth, numbers 6–11, were clinically appropriate for Patient 3. Patient 3 had no pain, discomfort, or history of trauma in these teeth, and there is no clinical documentation to support the need for root canal therapy. Second, these root canals did not meet generally accepted standards of medical practice due to their poor quality. Third, given Complete Dental Care's failure to document their medical necessity, these root canal therapies were provided primarily for the economic benefit and convenience of the provider, Complete Dental Care.

### E. Dr. Kramer Learns of the Financial Pressures Defendants Place on Employees

143.     After seeing and treating Patients 1 to 3 at his office, Dr. Kramer participated in a local charitable event, Give Kids a Smile Day, at Eastern Gateway Community College, on April 13, 2018.

144.     Dr. Kramer learned at this event that the pattern of profit-driven treatment he was seeing in former Complete Dental Care patients was a company-wide practice.

145.     Three Expanded Function Dental Auxiliary ("EFDA") students who were then employed by Complete Dental Care were at the same event.[8] Besides his concern with the treatment that Complete Dental Care had provided to Patients 1 to 3, Dr. Kramer was also curious about Complete Dental Care because he is a member of the Ohio Dental Association's Task Force on

---

[8] An Ohio EFDA has advanced training and is licensed to perform procedures such as placing fillings and other delegated duties. EFDAs are not permitted to perform the root canal procedure, tooth extractions, or removal of decayed portions of teeth. *See* Ohio Admin. Code 4715-3-01(C)(9); CODT, Ohio's EFDA Board Examiners, *What is an Ohio EFDA*, available at https://www.codtinohio.org/what-is-an-ohio-efda (accessed 5/22/2018).

Dental Service Organizations. He was interested in the viewpoints of these EFDA students on the corporate model for dentistry at Complete Dental Care, where they worked.

146.     And so, Dr. Kramer struck up a conversation with the students, and they discussed with him as a corporate model the general business practice at Complete Dental Care.

147.     The students reported that Dr. Doyle, the owner of the Complete Dental Care offices, pays for their EFDA training, but they have to sign a contract to stay two years with Complete Dental Care. While they work primarily in the Martins Ferry and Steubenville offices now, after they complete their EFDA training they may rotate through the other offices.

148.     Dr. Kramer was told that every day there is a monetary office production goal at the Complete Dental Care office at which the EFDA students are working. Employees take turns setting the production goals for the day. If there are new patients on the schedule, production goals are set higher because more work can be generated with new patients.

149.     Monetary production goals at the Martins Ferry and Steubenville Complete Dental Care offices are often around $25,000.00 per day. The EFDA students believed that similar daily production goals are in place at all Complete Dental Care offices.

150.     One student stated that the highest daily production goal they had ever had to meet was around $28,700.00. Another stated it was $26,300.00.

151.     At the Martins Ferry Complete Dental Care office, there is typically one dentist per day, but EFDAs are used extensively.

152.     In Dr. Kramer's experience, given the patient population in this area, on a good day, a dentist will provide $5,000.00 worth of treatments, or $25,000.00 in a five-day week. Even if EFDAs are used extensively, as these students reported occurs at Complete Dental Care, these daily goals are far higher than what the patient population in the area can support.

153. If daily goals are not met, not much happens, but they would "hear about it, if they did not make goal," by a phone call from Dr. Doyle or the corporate office.

154. By contrast, the employees will receive a quarterly bonus of $500.00 if these unrealistic production goals are met (which would not be atypical in the industry on its own) and will get a double bonus if they beat the previous quarter by 20%.

155. The EFDA students also said that there is high pressure to sell treatment plans to patients. They are required to only present the most expensive dental option to patients and not to present lower cost options, even if they are clinically appropriate. Patients are pressured to sign up for the treatment plan that day.

156. The Complete Dental Care providers were supposed to then perform the entire treatment in one day. They anesthetize the entire mouth and complete all treatment in one appointment.

157. One of the EFDA students stated that on two different patients, she had done sixteen restorations (fillings) during one appointment.

158. When so much treatment is required, the better practice is for patient to receive the treatments over multiple visits since that is both less traumatic to the patient and potentially leads to a better clinical outcome for the patient. At a minimum, a patient should at least be given this option.

159. The EFDA students admitted that they have had problems with disgruntled patients over time.

160. One of the students was very upset that treatment options other than the most expensive option were not given, stating that Complete Dental Care is "too money driven" and not patient centered.

### F. Complete Dental Care's Egregious Proposal to Perform Dental Care That Was Not Medically Necessary on a Child, Patient 4

161. Just a week after he saw Patient 3 in his office and a few days after speaking with the Complete Dental Care EFDA students at the Give a Kids a Smile event, on April 16, 2018, Dr. Kramer saw in his office a child, age 13, who previously received dental services at Defendant Complete Dental Care of Martins Ferry by Robert Doyle, D.M.D., LLC.

162. Patient 4's mother reported that Complete Dental Care had filled the same tooth three times in less than one year and charged her for it.

163. Then, during one visit, a Complete Dental Care representative came out to the waiting room and told Patient 4's mother that Patient 4 needed a root canal. Patient 4 had no current or past pain in this tooth.

164. An x-ray that Dr. Kramer took of Patient 4 on April 16, 2018 showed no teeth that required a root canal:



165. On May 8, 2018, Dr. Kramer spoke again with Patient 4's mother to confirm these facts.

39

166. Though Patient 4 was not an Ohio Medicaid beneficiary, this example shows that Complete Dental Care's scheme to place profits about medical necessity—going so far as harming patients for profit—is not limited to performing unnecessary root canals on adults.

### G. Dr. Kramer Learns Other Local Dentists Have Seen Similar Issues with Former Patients of Complete Dental Care

167. By mid-April, 2018, Dr. Kramer was highly concerned about the medically unnecessary and irresponsible procedures performed by Complete Dental Care on Patients 1 to 3 and almost provided to Patient 4, and was further concerned that Complete Dental Care was not providing its patients with any treatment options other than the most expensive option. Therefore, Dr. Kramer decided to reach out to other local dentists and see if they had seen any of the same issues he was seeing with former patients of Complete Dental Care.

168. In April and May of 2018, Dr. Kramer communicated with five other dentists who treated former patients of Complete Dental Care. All of these dentists believed that questionable treatments had been provided by Complete Dental Care to their patients.

169. One of these dentists told Dr. Kramer that he currently employed a hygienist that used to work for Complete Dental Care. This hygienist said that while at Complete Dental Care, she and her co-workers were intimidated by their superiors from reporting issues to the Ohio State Dental Board.

## VI. COMPLETE DENTAL CARE'S FALSE CLAIMS FOR PAYMENT TO THE OHIO MEDICAID PROGRAM FOR FEDERAL FUNDS

170. Given all that Dr. Kramer has learned about Complete Dental Care through his conversations with and treatment of its former Patients 1–4, his discussion with Complete Dental Care's EFDA students, and the feedback he has received from other local dentists who have also treated former patients of Complete Dental Care, it has become apparent that the business practice and policy of Complete Dental Care is to submit false claims for medically unnecessary services to

40

the Ohio Medicaid Program for federal funds, of which Complete Dental Care's claims for payment for Patients 1 to 3 are just examples.

171.    Ohio Medicaid has made medical necessity a fundamental concept underlying the program. Ohio Admin. Code 5160-1-01. Therefore, for Ohio Medicaid to cover dental services, a provider's claims for payment must be medically necessary. *See* Ohio Admin. Code 5160-1-02(A)(1). Therefore, Defendants' claims for payment for dental services to the Ohio Medical Program for services that were not medically necessary were materially false. As Ohio Medicaid providers, Defendants knew that violations of medical necessity requirements were material to the program.

172.    Given the company-wide scope of Complete Dental Care's policies, Complete Dental Care is also likely submitting false claims for payment for medically unnecessary services to the federally funded Pennsylvania Medical Program for treatment provided to patients at its Pennsylvania offices as well.

## COUNT ONE
### False Claims Act: Presentation of False Claims
### in Violation of 31 U.S.C. § 3729(a)(1)(A)

173.    Relator realleges and incorporates the preceding paragraphs as if set forth fully herein.

174.    Defendants, by and through their officers, members, agents, and employees authorized its various officers, members, agents, and employees to take the actions relating to the conduct alleged above.

175.    As a result of the schemes described above, including by providing dental care that failed to satisfy prerequisite coverage requirements of the Ohio Medicaid program, including medical necessity requirements, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment to the United States and/or the United States' contractors, grantees, or other recipients in violation of 31 U.S.C. § 3729(a)(1)(A).

41

176.     Defendants "knowingly" violated the False Claims Act, as that term is defined in 31

U.S.C. § 3729(b)(1). As to each of the above allegations, Defendants acted with actual knowledge of

the alleged information, in deliberate disregard of the truth or falsity of the alleged information,

and/or in reckless disregard of the truth or falsity of the alleged information.

177.     As a result, the United States suffered actual damages in an amount to be determined

at trial.

## COUNT TWO
### False Claims Act: False Records or Statements
### in Violation of 31 U.S.C. § 3729(a)(1)(B)

178.     Relator realleges and incorporates the preceding paragraphs as if set forth fully

herein.

179.     Defendants, by and through their officers, members, agents, and employees

authorized its various officers, members, agents, and employees to take the actions relating to the

conduct alleged above.

180.     As a result of the schemes described above, including by providing dental care that

failed to satisfy prerequisite coverage requirements of the Ohio Medicaid program, including medical

necessity requirements, Defendants knowingly made, used, or caused to be made or used materially

false or fraudulent statements material to false or fraudulent claims to the United States and/or the

United States' contractors, grantees, or other recipients, in violation of 31 U.S.C. § 3729(a)(1)(B).

181.     Defendants "knowingly" violated the False Claims Act, as that term is defined in 31

U.S.C. § 3729(b)(1). As to each of the above allegations, Defendants acted with actual knowledge of

the alleged information, in deliberate disregard of the truth or falsity of the alleged information,

and/or in reckless disregard of the truth or falsity of the alleged information.

182.     As a result, the United States suffered actual damages in an amount to be determined

at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of himself and the United States of America, respectfully ask this Court to enter judgment against Defendants, and each of them, as follows:

(a)     That this Court enter judgment against the Defendants jointly and severally in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus the maximum amount of civil penalties for each action in violation of 31 U.S.C. § 3729(a), and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)     That Relator be awarded all costs incurred, plus reasonable attorneys' fees and expenses, in accord with 31 U.S.C. § 3730(d);

(c)     That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

(d)     That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

(e)     That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

(f)     That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

(g)     That the United States and the Relator be awarded prejudgment and post judgment interest; and

(h)     That the United States and the Relator receive all relief, both at law and in equity, to which they may be reasonably entitled.

43

Respectfully submitted this May 31, 2018,

*Erin M. Campbell*

James B. Helmer, Jr. (0002878)
Erin M. Campbell (0079083)
James A. Tate (0085319)
HELMER, MARTINS, RICE &
  POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Email: jhelmer@fcalawfirm.com
       ecampbell@fcalawfirm.com
       jtate@fcalawfirm.com

44

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this COMPLAINT was served as follows on May 31,

2018:

### *Via Hand Delivery*

Hon. Benjamin C. Glassman
United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, OH 45202

### *Via Certified U.S. Mail & Federal Express*

Hon. Jefferson B. Sessions
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530

Erin M. Campbell