## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | : | |
| John N. Kramer, D.D.S. | : | Case No. 1:18-cv-373 |
| | : | Judge Douglas R. Cole |
| Plaintiff and Relator, | : | |
| | : | |
| v. | : | |
| | : | ***ORAL ARGUMENT REQUESTED*** |
| Robert A. Doyle, Jr., D.M.D., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## RELATOR'S MOTION TO JOIN PARTIES
## UNDER FEDERAL RULE OF CIVIL PROCEDURE 25(c)

Plaintiff–Relator Dr. John Kramer moves the Court, under Federal Rule of Civil Procedure 25(c), to join North American Dental Management, LLC ("**NADM**") and its affiliated entity Professional Dental Alliance, LLC ("**PDA**") as defendants due to a transfer of interest. While this False Claims Act case was pending and under seal, CDC Martins Ferry, LLC and CDC Steubenville, LLC (collectively, "**CDC Defendants**") sold their dental practices to NADM and PDA through an asset purchase agreement. The CDC Defendants are now shell companies, unable to produce basic discovery for any of the dental procedures or false claims at issue, regardless of time period, because all of the CDC Defendants' patient records, billing claims, and other business assets were sold to NADM and PDA four years ago.

Following the sale, the CDC Defendants had no dentistry tools or equipment, no dentists, no employees, made no treatment decisions, performed no dental work for themselves (if they did any dental work at all), and had no responsibility or liability for post-November 14, 2018 dental procedures and corresponding claims for payment at the dental facilities they sold. NADM acquired the non-clinical assets of the CDC Defendants (including claims, equipment, tools,

computers, inventories, office leases, and the goodwill of the business) and assumed liability for the purchased assets and dental operations at the CDC Defendants' former offices on and after November 14, 2018. PDA acquired the clinical assets of the CDC Defendants, including patient records, files, office documents, and correspondence, *i.e.*, the primary discovery materials in this case. Additionally, the CDC Defendants terminated all of their employees, and permitted NADM to re-employ them. From November 14, 2018, NADM's dentists, acting under service agreements with PDA, made the treatment decisions and performed the dental work at the facilities formerly owned by the CDC Defendants, including the procedures pled for representative example Patients Five, Six, and Seven of the Third Amended Complaint (Doc. 37, ¶¶201–20; 221–36; 239–54) which occurred as late as May 10, 2019. When the procedures in these representative examples occurred, the CDC Defendants did not employ the people who did the work, and they did not own or operate the dental practices where the work was done.

In short, NADM and PDA are the correct defendants as to the false claims alleged from November 14, 2018 to the present.[1] The Court has already found that these post-November 2018 false claims alleged by the Relator satisfied Federal Rule of Civil Procedure 9(b) and survived the motions to dismiss (Doc. 67). Discovery and trial will also be significantly streamlined—and perhaps is only possible—by joining NADM and PDA as parties because they possess the relevant records and will have liability if Relator prevails in the case. The facts justify NADM and PDA being joined as defendants, and their involvement will encourage the just, speedy, and inexpensive determination of this case.

A memorandum of law supporting this motion follows. This issue was raised with the Court at the October 7, 2022 status conference. Relator's counsel respectfully requests the

---

[1] The CDC Defendants should remain in the case for the pre-November 14, 2018 allegations, as they retained those liabilities.

opportunity to be heard on this motion to clarify the issues, explain the Asset Purchase

Agreement, and assist the Court.


Date: November 21, 2022

Respectfully submitted,

/s B. Nathaniel Garrett
James B. Helmer, Jr. (0002878)
James A. Tate (0085319)
B. Nathaniel Garrett (0090939)
HELMER, MARTINS, TATE &
 GARRETT CO., LPA
1745 Madison Road
Cincinnati, OH 45206
Telephone: (513) 421-2400
Fax: (513) 421-7902
Email: jhelmer@fcalawfirm.com
     jtate@fcalawfirm.com
     ngarrett@fcalawfirm.com

## MEMORANDUM IN SUPPORT OF RELATOR'S MOTION TO JOIN PARTIES UNDER FEDERAL RULE OF CIVIL PROCEDURE 25(c)

### I.     INTRODUCTION

This is a False Claims Act case brought by a dentist with over 37 years of experience, Dr. John Kramer, serving as a Relator on behalf of the United States of America. Dr. Kramer alleges that Defendants submitted or caused submission of false claims to Ohio Medicaid for dental procedures that were medically unnecessary or for which the individual who performed the procedure was not properly licensed. (Doc. 37, Third Amended Complaint). Despite a 2018 filing date, the case is in its early stages. On April 21, 2022, this Court granted in part and denied in part motions to dismiss. (Doc. 67). Following that Order, the remaining defendants were CDC Martins Ferry, LLC and CDC Steubenville, LLC (collectively, "**CDC Defendants**"). The CDC Defendants filed their answer on August 25, 2022. (Doc. 69).

Relator served discovery on the CDC Defendants, but Relator was surprised to learn that the CDC Defendants did not possess *any* relevant documents except an Asset Purchase Agreement. That Asset Purchase Agreement revealed that an all-inclusive transfer of interest occurred on November 14, 2018 from the CDC Defendants to North American Dental Management, LLC ("**NADM**") and Professional Dental Alliance, LLC ("**PDA**").

Relator knew generally that an acquisition of some interest had occurred and pled it. (Doc. 37, #453 ("In late 2018, North American Dental Group purchased or acquired a management interest in Dr. Doyle's Complete Dental Care practices.")). The full extent of this transfer and the actual parties involved, however, were unknown by Relator and his counsel until after August 24, 2022, when the CDC Defendants first produced the Asset Purchase Agreement

to Relator. This agreement shows that NADM and PDA acquired all (or substantially all)[2] of the assets of the CDC Defendants. *See* **Exhibit A**, Asset Purchase Agreement ("**APA**"), ¶2.1, CDC000014. The Asset Purchase Agreement also transfers any post-closing liability for the assets and dental business to NADM. *Id.* at ¶2.3, CDC000015. Following the sale, NADM and PDA made the treatment decisions and performed the dental procedures at the CDC Defendants' former Martins Ferry and Steubenville offices, including specifically the dental procedures performed after the closing on three of the Patients pled in the Third Amended Complaint (Patients Five, Six, and Seven (Doc. 37)).

Federal Rule of Civil Procedure 25(c) permits the Court to join NADM and PDA as defendants based on a transfer of interest alone. Adding NADM and PDA will bring the parties responsible and liable for post-November 2018 false claims into the case. Most importantly for purposes of Rule 25(c), all aspects of the case will be facilitated by joining NADM and PDA as defendants. Relator's motion should be granted.

## II.  BACKGROUND

### A.  Facts & Procedural Posture

Relator's operative complaint was filed on December 3, 2019, alleging claims against Defendants Robert A. Doyle, Jr., D.M.D., CDC Calcutta, LLC, CDC Dennison, LLC, CDC Martins Ferry, LLC, CDC Newcomerstown, LLC, CDC Shadyside, LLC, CDC Steubenville, LLC, CDC Champion Heights, LLC, North American Dental Group, LLC, and North American Dental Management, LLC. (Doc. 37, Third Amended Complaint). Defendants moved to dismiss

---

[2] Assets excluded from the sale were unrelated to the dental practice, such as Dr. Robert Doyle's personal effects, artwork, cellphones, and several luxury vehicles leased by CDC Steubenville (fka Complete Dental Care of Steubenville by Robert Doyle, DMD). APA, ¶2.2, CDC000015 and Schedule 2.2(g), CDC000125.

(Doc. 48 and 49). The Court denied the motions to dismiss as to CDC Martins Ferry, LLC and CDC Steubenville, LLC, and granted the motions as to all other defendants. (Doc. 67).

Proposed joinder defendant NADM was dismissed by the Court in its Order partially granting Defendants' motions to dismiss. Proposed joinder defendant PDA has never been a defendant in the case. Concerning NADM (and its parent company North American Dental Group, LLC), the Court concluded that Relator's allegations (and proposed amended allegations, Doc. 57-2) failed to "tie the NADG Defendants to the specific false claims for dental treatment that Kramer alleges CDC Martins Ferry and CDC Steubenville submitted to Ohio Medicaid." (Doc. 67, #1402). Now that Relator possesses the Asset Purchase Agreement, that missing link has been revealed: NADM bought the Complete Dental Care business from the CDC Defendants and assumed liability for post-November 14, 2018 false claims for dental treatment submitted to Ohio Medicaid, including for the post-transfer examples pled in Relator's Third Amended Complaint.

Under the Asset Purchase Agreement, NADM "assumes, and thereafter shall pay, discharge and perform . . . (a) only the liabilities and obligations of Sellers [the CDC Defendants] arising under the Purchased Assets and operation of the Business from and after the Closing Date[.]" APA, ¶2.3, CDC000015. The CDC Defendants "retain[ed] responsibility for all liabilities and obligations accrued as of the Closing Date[.]" *Id.*, CDC000016. NADM also agreed to indemnify the CDC Defendants for "all liabilities or obligations relating to or arising out of the provision by PDA of professional dentistry services or the Assumed Liabilities after the Closing Date, including the operation of the Business following the Closing Date . . . ." *Id.* ¶9.2(c), CDC000044.

These facts were not previously known by Relator and were not accurately recited by NADM in the briefing on the motions to dismiss. NADM had said that "[t]he terms of the parties' asset purchase agreements show that <u>NADG</u>[3] did not assume *any* liabilities of the CDC Entities." (Doc. 55, #901) (emphasis added). In truth, NADM did assume liabilities for the assets and business purchased from the CDC Defendants from and after November 14, 2018. APA, ¶2.3, CDC000015 ("Buyer [NADM] hereby assumes . . . liabilities and obligations of Sellers [CDC Defendants] arising under the Purchased Assets and operation of the Business from and after the Closing Date[.]").

Everything relating to the Complete Dental Care practice—where the post-transfer dental procedures alleged in the Third Amended Complaint occurred—was sold to NADM and PDA. Furthermore, the Asset Purchase Agreement prevents the CDC Defendants from competing or interfering with NADM's and PDA's Complete Dental Care practice for a period of five years, so the CDC Defendants do not appear to be practicing dentistry anywhere.

Likely because all patient records and assets are in the possession of NADM and PDA, the CDC Defendants answered that they were "without knowledge or information sufficient to form a belief as to the truth" for over half of all allegations in Relator's Third Amended Complaint. (*See* Doc. 69). The CDC Defendants could not even admit or deny that the example patients identified in the Third Amended Complaint received treatment at their former offices. *Compare* Doc. 37, #482 ("137. Patient 2 is also a Medicaid beneficiary, who previously received dental services at Complete Dental Care of Steubenville by Robert Doyle, D.M.D., LLC.") *with* Doc. 69, #1417 ("Defendants are without knowledge or information sufficient to form a belief as

---

[3] North American Dental Management, LLC and North American Dental Group, LLC were referred to collectively as "NADG." Doc. 55, #885 (footnote 1); *see also* Doc. 49, #570 (footnote 2).

to the truth of the allegations in paragraph 137 of the TAC, and the allegations are therefore denied.").

The sale of the dental practice has also stymied the CDC Defendants' ability to respond to discovery. Relator served document requests on the CDC Defendants, and the CDC Defendants were unable to produce a single document except the transfer agreement. The CDC Defendants responded to basic document requests for things like "invoices," "claims for payment," "provider agreements," "policies," "professional license[s]" and "employee handbooks" by stating that such documents did not exist "within their possession, custody, or control." **Exhibit B**, CDC Defendants' Response to Relator's Rule 34 Requests. It was only through this initial discovery that Relator learned that the CDC Defendants lacked responsive documents because _everything_ was sold pursuant to the Asset Purchase Agreement and the CDC Defendants ceased operating dental practices. Relator served discovery on the CDC Defendants to obtain the Asset Purchase Agreement, and Relator obtained that agreement on August 24, 2022.

On October 7, 2022, a telephonic status conference was held. In light of what had only recently been learned, Relator's counsel raised the issue of the proper parties to the case on this call. The Court permitted Relator until November 21, 2022 to file a motion related to adding any new or different defendants. The instant motion timely followed. Pursuant to Rule 25(c), the motion was separately served on NADM and PDA.

### B. The Asset Purchase Agreement

The CDC Defendants sold their dental practice and business assets to NADM (the "Buyer" in the Asset Purchase Agreement) and to PDA, with a closing date of November 14, 2018. **Exhibit A**, APA, CDC000006 & ¶2.1, CDC000014–15. As part of this sale:

- The CDC Defendants' clinical business was acquired and operated by PDA. *Id.* ¶2.1(f), CDC000014.

- PDA was assigned and became the custodian of the CDC Defendants' patient contracts and records. *Id.* ¶2.1(e), (i), CDC000014–15; *see also* definition of "Custodial Agreement," CDC000008.

- The CDC Defendants' books, patient records, files, documents and correspondence (including all discs, tapes and other media storage data and information) were transferred directly to PDA. *Id.* ¶2.1(e), CDC000014.

- The CDC Defendants' closing receivables were transferred to PDA. *Id.* ¶2.1(a), CDC000014.

- The CDC Defendants granted PDA a special power of attorney to bill the CDC Defendants' former patients and collect on CDC Defendants' claims for dental work constituting the closing receivables. *Id.* ¶8.3, CDC000039.

- The CDC Defendants' contracts with third-parties, including the Steubenville office lease and employment agreements with dentists, were assigned to NADM, and patient contracts were assigned to PDA. *Id.* ¶2.1(i), CDC000015; Schedule 2.1(i), CDC000119–22.

- The CDC Defendants' permits to conduct the dentistry business were assigned to PDA. *Id.* ¶2.1(j), CDC000015.

- The CDC Defendants' intellectual property, including the Complete Dental Care name and logo, were assigned or transferred to PDA. *Id.* ¶2.1(k), CDC000015; Schedule 2.1(k), CDC000123; *see also* definition of "Intellectual Property," CDC000010.

- The CDC Defendants were required to remove "Complete Dental Care" from their corporate name. *Id.* ¶8.6, CDC000041–42.

- The CDC Defendants agreed that, for a period of five years from the closing date, they would not solicit patients or employees, interfere with business relationships, or compete with NADM's and PDA's newly-acquired Complete Dental Care practice at or within a twenty-five mile radius of the CDC Defendants' former practice locations in Martins Ferry and Steubenville. *Id.* ¶8.2(b), CDC000036–37.

- The CDC Defendants agreed to terminate all of their employees effective as of the closing date and agreed to cooperate with NADM to enable NADM to employ the CDC Defendants' former employees. *Id.* ¶8.2(c), CDC000037–38. The CDC Defendants' former dentists that entered into Professional Service Agreements with PDA became covered on PDA's insurance policies effective at the closing date for services provided on behalf of PDA after the closing date. *Id.* at Exhibit A, Post-Closing Agreement, ¶H, CDC000062.

- The CDC Defendants' non-clinical business assets including the goodwill value of the Defendants' businesses as a going concern were transferred to NADM. *Id.* ¶2.1(f), CDC000014.

- The CDC Defendants' operating assets, including dentistry equipment, tools, machinery, furniture, fixtures, computer hardware and software, leased equipment, and supplies were transferred to NADM. *Id.* ¶2.1(b), (c), (d), CDC000014.

- NADM assumed liability for and agreed to pay "liabilities and obligations of [CDC Defendants] arising under the Purchased Assets and operation of the Business from and after the Closing Date . . . ." *Id.* ¶2.3, CDC000015.

- NADM agreed to indemnify and defend the CDC Defendants against any and all damages incurred by the CDC Defendants arising out of or related to "all liabilities or obligations relating to or arising out of the provision by PDA of professional dentistry services or the Assumed Liabilities after the Closing Date, including the operation of the Business following the Closing Date . . . ." *Id.* ¶9.2(c), CDC000044.

\* \* \*

In short, starting on November 14, 2018, NADM and PDA operated the Complete Dental Care dental practices, made the treatment decisions, did the dental work, and submitted the claims for payment—not the CDC Defendants. The asset sale allowed NADM and PDA to continue the Complete Dental Care dentistry practice that was no longer owned by the CDC Defendants.

Furthermore, Dr. Robert Doyle—the sole owner and member of the CDC Defendants—continued to maintain an ownership interest in the NADM and PDA owned Complete Dental Care practice by acquiring an ownership interest ("common membership units" as it is referred to in the Asset Purchase Agreement) in North American Dental Group, LLC (the sole equity owner and parent company of NADM). APA, ¶2.4(b), CDC000016; ¶2.8(e), CDC000019.

### C. Relator's Efforts to Confirm the Transfer of Interest with Opposing Counsel

One week after the status conference with the Court on October 7, 2022, Relator's counsel sent letters to counsel for the CDC Defendants and counsel for NADM, seeking to

confirm facts learned about the transfer of interest. *See* **Exhibit C**, Oct. 14, 2022 Letter to CDC Defendants' Counsel; **Exhibit D**, Oct. 14, 2022 Letter to NADM's Counsel.

Counsel for the CDC Defendants did not address the specific facts requested to be confirmed, but instead responded that the Asset Purchase Agreement "speaks for itself" and that the agreement describes the division of liabilities after the closing date. **Exhibit E**, Oct. 25, 2022 Letter to Relator's Counsel. Counsel confirmed that the CDC Defendants did not assume "liabilities specifically assumed by the purchasers [NADM and PDA] as described in the [Asset Purchase Agreement] and its exhibits." *Id.* Regarding the CDC Defendants' performance of work after November 14, 2018, counsel added that:

> CDC entities and the NADG entities agreed upon a transition period while PDA and its dentists were completing their credentialing process. *See* APA ¶ 8.2(f) and Exhibit A. During that time, Defendants continued to service patients and received payments from third-party insurers, including Medicaid, for doing so. The administrative function of submitting the bills for such services after November 14, 2018 was performed by NADM.

*Id.*

Paragraph 8.2(f) of the Asset Purchase Agreement discusses the "wind-down of Sellers' [the CDC Defendants'] operation of the Business" and references post-closing policies. APA, ¶8.2(f), CDC000038. The post-closing agreement is meant to "effect the business transition" from the CDC Defendants to NADM and PDA. *Id.*, Exhibit A, Post-Closing Transition Policies and Agreement, CDC000059. Counsel did not identify how long the "transition period" lasted or what it entailed, but the transition agreement reflects only that the CDC Defendants' "old provider number" and EIN could be used by PDA until PDA and its dentists were credentialed. *Id.*, ¶C, CDC000061. This does not suggest that the CDC Defendants—who had no dentists, office, patients, or equipment—performed the dental work that occurred at NADM and PDA's dental offices. Regardless, NADM assumed liability and agreed to indemnify the CDC

Defendants for work the CDC Defendants may have done during the transition period. APA, ¶2.3, CDC000015; ¶9.2(c), CDC000044.

Finally, based on "information and belief" and admittedly without possessing the "patient and billing records in question," counsel for the CDC Defendants claimed that the dental treatment for Patients Five, Six, and Seven (which occurred after November 14, 2018) were performed by her client. **Exhibit E**. On this point, counsel is simply mistaken. Relator possesses the records for Patients Five, Six, and Seven—which were produced by counsel for the CDC Defendants before the motions to dismiss.[4] Relator confirmed that the procedures were performed by dentists whose employment contracts were assigned to NADM (Drs. Daniel Bartok and David Plantz, APA, Schedule 2.1(i), CDC000119). At the time that those procedures were performed, those dentists were ostensibly operating under professional service agreements with PDA. *See* APA, ¶4.20, CDC000026; APA, Exhibit A, Post-Closing Transition Policies and Agreement, ¶C, CDC000061 & ¶H(2)(a), CDC000062.

The dental work discussed in the Third Amended Complaint, Doc. 37 ¶¶201–20, for Patient Five occurred between October 17, 2018 and April 8, 2019, and included allegedly medically unnecessary root canals by dentist Dr. Plantz on March 22, 2019 and dentist Dr. Bartok on April 8, 2019.

The dental work discussed in the Third Amended Complaint, Doc. 37 ¶¶221–36, for Patient Six occurred on March 15 and March 26, 2019, and included an allegedly medically unnecessary root canal by dentist Dr. Plantz on March 15, 2019 and other dental work allegedly

---

[4] The medical records for Patients Five, Six, and Seven were previously produced in the case by the CDC Defendants and Dr. Doyle and are in the possession of NADM and the CDC Defendants. These records contain Protected Health Information, and the Relator can provide these records for an *in camera* review or file them if it would assist the Court.

performed by unlicensed individuals. Patient Six also executed a HIPAA/Privacy Notice and Financial Agreement with PDA on March 15, 2019.

The dental work discussed in the Third Amended Complaint, Doc. 37 ¶¶239–54, for Patient Seven occurred on May 10, 2019, and included an allegedly medically unnecessary and substandard root canal and fillings from dentist Dr. Plantz and dental work allegedly performed by unlicensed individuals. Patient Seven also executed a HIPAA/Privacy Notice and Financial Agreement with PDA on May 10, 2019.

But the CDC Defendants had terminated all of their employees, including Drs. Plantz and Bartok, effective as of November 14, 2018. APA, ¶8.2(c), CDC000037; *see also* APA, ¶4.13, CDC000023 & Schedule 4.13, CDC000224 (listing CDC Defendant employees). The CDC Defendants also assigned NADM the employment contracts for Drs. Plantz and Bartok on November 14, 2018. *See* APA, ¶2.1(i), CDC000015; Sch. 2.1(i), at ¶¶2(d) & 2(e), CDC000119.

The CDC Defendants, admittedly, have no factual basis for their unsubstantiated attempt to shield NADM and PDA from the false claims pled in the Third Amended Complaint. They had no employees to perform the work described in these three examples, and no facilities or equipment to do it with. Moreover, the CDC Defendants did not rebut what the Asset Purchase Agreement shows: PDA owned the clinical assets and had professional service agreements with NADM's dentists; PDA performed dental work at the Complete Dental Care offices where the unnecessary, unlicensed, and poor quality work occurred; NADM assumed liabilities for operation of the business; NADM employed the dentists that did the work on Patients Five, Six, and Seven identified in the Third Amended Complaint; and, NADM submitted the resulting false claims. Thus, NADM and its affiliate PDA are both liable for submitting or causing the submission of these claims, as well as any resulting damages.

NADM's counsel—who likely also represent its affiliated entity PDA—did not respond to Relator's letter. Relator requested NADM's counsel to confirm that:

> (1) PDA, or its employees, agents, and/or representatives performed dental work at Defendants' former Martins Ferry and Steubenville locations after November 14, 2018;

> (2) NADM assumed the liabilities for operation of the business at Defendants' former Martins Ferry and Steubenville locations after November 14, 2018;

> (3) The only individuals making treatment decisions, performing dental work, and billing for dental procedures at Defendants' former Martins Ferry and Steubenville locations after November 14, 2018 were employees, agents, and/or representatives of PDA;

> (4) Patient Five in Relator's Third Amended Complaint, Doc. 37, received some of the dental work alleged in that complaint, including root canals on teeth numbers 18 and 19, at Complete Dental Care of Martins Ferry when it was owned and operated by NADM and PDA; and,

> (5) Patients Six and Seven in Relators' Third Amended Complaint received the dental work alleged in that complaint at Complete Dental Care of Martins Ferry when it was owned and operated by NADM and PDA.

**Exhibit D**. Although NADM did not respond to Relator's requests, NADM previously represented in this case that:

> NADM is a dental service organization ("DSO") that provides non-clinical support services to dental practices. NADM does not employ dentists to perform clinical services and does not own dental practices. Accordingly, NADM does not submit direct claims to the government and is not responsible for any of the clinical judgments or treatment of the dentists it supports.

(Doc. 49, #571–72). Notably, NADM's representation in the briefing on the motions to dismiss conflicts with the facts now known. *First*, NADM's claim that it "does not employ dentists to perform clinical services" conflicts with the assignment of the CDC Defendants' employment contracts to NADM in the Asset Purchase Agreement. *Second*, NADM's representation that it "does not submit direct claims to the government" conflicts with the representation from counsel for the CDC Defendants that the "administrative function of submitting the bills for such services after November 14, 2018 was performed by NADM." **Exhibit E**. Furthermore, NADM's counsel

- 11 -

represented to the Court during the October 7, 2022 status conference that NADM submits the claims.

At bottom, the Asset Purchase Agreement shows and opposing counsel did not rebut that after November 14, 2018: (1) NADM and PDA owned, operated, and performed dental procedures at the Martins Ferry and Steubenville Complete Dental Care offices; and (2) NADM held the employment contracts for the dentists operating as agents for PDA, provided non-clinical support to PDA for the dental procedures, and assumed liability for claims submitted from the Martins Ferry and Steubenville Complete Dental Care offices.

## III.   ARGUMENT

A transfer of interest from the CDC Defendants to NADM and PDA occurred while this litigation was pending. The transferors, the CDC Defendants, are proper parties to the case as to pre-November 14, 2018 false claims, but the transferees, NADM and PDA, are responsible for the post-November 14, 2018 false claims and should be joined as defendants. Federal Rule of Civil Procedure 25(c) exists to allow the transferee to be joined in the action with the original party in such circumstances:

> **(c) Transfer of Interest.** If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c).

"Rule 25 allows a court to join the recipient of a transferred property interest[.]" *United States v. Harold*, 847 F. App'x 296, 300 (6th Cir. 2021). Rule 25(c) is designed to allow an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring plaintiff to initiate a new lawsuit. *Verizon Advanced Data Inc. v. FrogNet, Inc.*, No. 05-cv-955,

2011 U.S. Dist. LEXIS 145731, at *29 (S.D. Ohio Dec. 19, 2011) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 191 (8th Cir. 1995)).

"The matter of substitutions due to a transfer of interest is within the discretion of the district court." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 154 (6th Cir. 1992). While Rule 25(c) does not make joinder or substitution mandatory, it empowers the court to join parties when it would help facilitate the conduct of a case. *See Television Reception Corp. v. Dunbar*, 426 F.2d 174, 178 (6th Cir. 1970). Thus, the primary consideration for a court in deciding a Rule 25(c) motion is whether joinder will expedite and simplify the action. *Taberna Capital Mgmt., LLC v. Jaggi*, No. 08 Civ. 11355 (DLC), 2010 U.S. Dist. LEXIS 35347, at *7 (S.D.N.Y. Apr. 9, 2010).

The Court should exercise its discretion to join NADM and PDA as Defendants.

### A. The CDC Defendants Sold All of Their Assets to NADM and PDA, Constituting a Transfer of Interest Under Rule 25(c)

"In the context of substitution of corporate entities under Rule 25(c), a transfer of interest occurs when one corporation becomes the successor by merger or other acquisition of the interest the original corporate party had in the lawsuit." *Simplifi Health Benefit Mgmt., LLC v. Cayman Is. Nat'l Ins. Co.*, No. 2:13-cv-714, 2015 U.S. Dist. LEXIS 120137, at *7 (S.D. Ohio Sept. 9, 2015) (citation omitted). A corporation's purchase of all or substantially all of the business assets of a corporate defendant is a recognized "transfer of interest" under Rule 25(c). *See, e.g.*, *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, No. 10cv0541-GPC-WVG, 2013 U.S. Dist. LEXIS 53664, at *4 (S.D. Cal. Apr. 15, 2013); *Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 13 (N.D. Ga. 1973); *see also Negron-Almeda v. Santiago*, 579 F.3d 45, 53 (1st Cir. 2009) ("The rule applies to a wide variety of transfers in interest.") (citing 6 Jerry E. Smith, *Moore's Federal Practice - Civil* § 25.32 (2009)).

Important to the courts in *Zest* and *Wainright* was that the new owner of the assets would have or possibly could have the burden of liability associated with operation of the assets. *Zest* at *5 ("Although the rule to join parties refers to a transfer of interest without more, joinder is appropriate when the party to be joined could be called to respond for the liability of the original party."); *Wainwright* at 13 ("[S]ince it appears to the court that Dairymen, Inc. has or could have a burden of liability in this case as a result of its purchase of the assets of defendant Irvindale and that a multiplicity of lawsuits may be avoided if Dairymen, Inc. were joined as a party defendant, the court will order its joinder pursuant to Rule 25(c).").

Thus, the general rule for Rule 25(c) in the context of an asset purchase sale is, if the assets and liabilities have shifted to a new company, a transfer of interest has occurred.

Here, the nature of the asset purchase by NADM and PDA easily qualifies as a "transfer" for purposes of Rule 25(c). Like the asset sales in *Zest* and *Wainright*, all or substantially all of the business assets of the CDC Defendants were sold to NADM and PDA. Along with the asset sale, the CDC Defendants transferred away liability for the dental practice as of November 14, 2018 (APA, ¶2.3, CDC000015–16) and further limited their liability for future operations of the Complete Dental Care practice by requiring NADM to indemnify the CDC Defendants for liability arising after the sale (APA, ¶9.2(c), CDC000044). Accordingly, a transfer of interest has occurred.

Further confirmation of this transfer of interest can be found under Ohio law, which governs the Asset Purchase Agreement. (APA, ¶10.5, CDC000049). Under Ohio successor liability law, a corporation that purchases the assets of another is liable for the debts and obligations of the seller if one of the following circumstances apply: "(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation

or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993).

Here, at least two scenarios apply. First, NADM expressly assumed liabilities in the Asset Purchase Agreement. APA, ¶2.3, CDC000015. PDA impliedly assumed liabilities by performing dental treatment as Complete Dental Care after November 14, 2018. Second, the asset sale reflects that NADM's and PDA's purchase of Complete Dental Care was a mere continuation of the dental practice as it had been conducted by the CDC Defendants.

On this last point, the case of *Stramaglia v. United States*, 377 F. App'x 472 (6th Cir. 2010) is instructive. In *Stramaglia*, the Sixth Circuit affirmed a decision, under Michigan law analogous to Ohio law, that an asset sale resulted in a "mere continuation" for liability purposes based on an examination of "the totality of the circumstances." *Id.* at 475. Relevant to the Court was that the successor corporation: (1) acquired substantially all assets of the company; (2) the companies shared common ownership; (3) after the asset sale, the business was conducted in the same manner and in the same location (whether its "main corporate purpose was to conduct the same business"); (4) the successor retained the same managers; and (5) the successor retained its predecessor's employees. *Id.* at 475–77. Just like in *Stramaglia*, NADM and PDA acquired substantially all of the assets of the CDC Defendants; the business was the same dental practice conducted under the same name—"Complete Dental Care"—at the same Martins Ferry and Steubenville locations; NADM hired the employees of the CDC Defendants terminated as part of the sale, and NADM assumed employment contracts for the CDC Defendants' former dentists; and Dr. Doyle himself acquired an ownership interest in NADM's parent company.

- 15 -

In sum, the only requirement for joinder under Rule 25(c)—that a "transfer of interest" occur—has been satisfied by the sale of Complete Dental Care to NADM and PDA.

**B. Joinder of NADM and PDA is Appropriate and Necessary to Facilitate an Efficient Proceeding**

"The primary basis for deciding the motion is whether substitution would 'facilitate the conduct of the litigation.'" *Comm'ns Imp. Exp., S.A. v. Republic of the Congo & Caisse Congolaise d'Amortissement's*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (quoting *Citibank v. Grupo Cupey, Inc.*, 382 F.3d 29, 32 (1st Cir. 2004); citing 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1958 (3d ed. 2007)). Every Federal Rule of Civil Procedure must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. Rule 25(c) itself provides a specific vehicle to achieve litigation efficiencies and is meant to ensure that the conduct of the litigation is "not defeated by a transfer of interest." *United States v. Kwitny*, No. 6:18-cv-1366-RBD-LHP, 2022 U.S. Dist. LEXIS 116299, at *6 (M.D. Fla. May 23, 2022) (quoting *Tesseron, Ltd. v. Oce N.V.*, 110 F. Supp. 3d 1255, 1257–58 (M.D. Fla. 2015)), *adopted in full*, 2022 U.S. Dist. LEXIS 116301 (M.D. Fla. June 7, 2022).

The most efficient way for this case to proceed is with NADM and PDA as defendants. The CDC Defendants lack basic discovery and cannot adequately respond to the Relator's allegations, as demonstrated by their discovery responses and Answer (Doc. 69) to the Third Amended Complaint. NADM and PDA possess the relevant discovery and may be held liable for the false claims at issue, so discovery and trial will be more manageable if they are parties. Without their joinder, this case will be unnecessarily bogged down by extensive third-party subpoena practice. And perhaps most importantly, NADM and PDA are responsible for the post-transfer false claims alleged in the Complaint that were accepted by Court as sufficient to state a

claim for False Claims Act violations. *See* Doc. 67, #1388. NADM and PDA dentists made the treatment decisions, did the work, and submitted these claims to the Government; the CDC Defendants, who at this time were empty shells with no assets or employees, did not. Under these circumstances, NADM and PDA should be joined.

### C. NADM's Earlier Dismissal Does Not Prevent Joinder Under Rule 25(c)

Although NADM was previously named as a Defendant and was dismissed under the Court's motion to dismiss, that earlier ruling does not prevent the Court from adding NADM through Rule 25(c).

First, Rule 25(c) is simply a procedural vehicle, and it does not create new relationships among parties or alter their substantive rights. *Citibank v. Grupo Cupey, Inc.*, 382 F.3d 29, 32 (1st Cir. 2004). Thus, Rule 25(c) does not determine what claims survive a transfer of interest. *Id.* Rather, it simply provides procedures to join a party in an action where there are surviving claims. Applied here, the Court has determined that Relator's allegations against the CDC Defendants survived a motion to dismiss, and Relator is simply seeking to join NADM to the case for the post-2018 false claims pled against the CDC Defendants, for which NADM (and PDA) are responsible. Thus, the Court's earlier finding that Relator did not satisfy Rule 9(b) as to NADM is not a barrier to the sole question under Rule 25(c) of whether NADM acquired an interest in the claims that did satisfy Rule 9(b). And as set forth earlier, a transfer of interest occurred which gave NADM an interest in the post-November 14, 2018 false claims.

Second, the Court has the authority and discretion to modify its earlier decision on NADM under Federal Rule of Civil Procedure 60. Specifically, Rule 60 permits the Court to modify an earlier judgment for, among other reasons, "mistake," "surprise," "newly discovered evidence" or "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(1), (2), and (6). Rule 60

- 17 -

is a discretionary rule that the Court can use when one of the criteria in the rule applies, as it does here.

Until Relator received the Asset Purchase Agreement through discovery in August 2022, Relator was unaware of the full extent and implications of the asset sale from the CDC Defendants to NADM. It is now clear that the CDC Defendants ceased operating Complete Dental Care and do not have responsibility for the post-November 14, 2018 false claims, and that it was in fact NADM and PDA that were responsible for dental procedures pled for representative example Patients Five, Six, and Seven. This fact was not disclosed during the earlier briefing on the motions to dismiss, so it is a surprise. Indeed, NADM represented in its Reply on the motions to dismiss that it assumed no liabilities in the asset sale, and NADM repeated Relator's unknowingly mistaken statement that the CDC Defendants were still operating a dental practice in order to advance its own argument—facts disproven by NADM's Asset Purchase Agreement. *See* Doc. 55, #901 ("The terms of the parties' asset purchase agreements show that NADG did not assume any liabilities of the CDC Entities. Further, the TAC alleges that the CDC Entities are still in operation."). Moreover, it would offend justice for NADM—the actual party who submitted or caused submission of the false claims after November 14, 2018 and assumed liability for such claims—to not be a party to the case.

Thus, NADM can be joined as a defendant under Rule 25(c), or by granting relief from the prior decision dismissing NADM through Rule 60.

## IV. CONCLUSION

The Court should join North American Dental Management, LLC (NADM) and Professional Dental Alliance, LLC (PDA) as defendants under Federal Rule of Civil Procedure 25(c).

Respectfully submitted,

/s B. Nathaniel Garrett
James B. Helmer, Jr. (0002878)
James A. Tate (0085319)
B. Nathaniel Garrett (0090939)
HELMER, MARTINS, TATE &
  GARRETT CO., LPA
1745 Madison Road
Cincinnati, OH 45206
Telephone: (513) 421-2400
Fax: (513) 421-7902
Email: jhelmer@fcalawfirm.com
      jtate@fcalawfirm.com
      ngarrett@fcalawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 21, 2022, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all counsel of record to this action.

The undersigned further certifies that on November 21, 2022, a copy of the foregoing was served on counsel for North American Dental Management, LLC and will be served on Professional Dental Alliance, LLC as provided in Federal Rule of Civil Procedure 4.

s/ B. Nathaniel Garrett