UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.*, JOHN N. KRAMER,

      Plaintiff,

v.

ROBERT A. DOYLE, JR., *et al.*,

      Defendants.

Case No. 1:18-cv-373
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

John Kramer believes dentists in eastern Ohio performed medically unnecessary dental procedures and billed those procedures to Medicaid. He brought a qui tam action against multiple defendants, including CDC Martins Ferry, LLC and CDC Steubenville, LLC (CDC defendants), under the False Claims Act. (Doc. 1). On November 14, 2018, after this litigation began but before the Court unsealed the matter,[1] the CDC defendants sold their dental practices to North American Dental Management, LLC (NADM) and Professional Dental Alliance, LLC (PDA). (Doc. 87-1, #2073). Kramer did not know about PDA's involvement at the time, but he did learn of NADM's role and amended his Complaint to include it. (3d Am. Compl., Doc. 37).

---

[1] Kramer filed his Complaint under seal on May 31, 2018. (Doc. 1). The sale occurred November 14, 2018. (Doc. 87-1, #2073). The Court unsealed the case on September 12, 2019. (Doc. 17). Defendants moved to dismiss three months later. (Doc. 48).

Defendants, including NADM and the CDC defendants, moved to dismiss. (Docs. 48 and 49). The Court granted in part and denied in part the CDC defendants' motion and granted the NADM defendants' motion. (Doc. 67). On one hand, Kramer had plausibly alleged the CDC defendants submitted false claims. (*Id.* at #1388–90). But he had not plausibly alleged the same for NADM. (*Id.* at #1396–97). The Court dismissed the latter with prejudice but did not enter judgment. (*Id.* at #1403). Discovery commenced.

Now, Kramer says discovery has produced sale contracts proving that NADM and PDA bear liability for the CDC defendants' false claims. (Mtn. to Join, Doc. 71, #1439–40). He moved under Federal Rule of Civil Procedure 25(c) to assert his claims against NADM and PDA, arguing they bear liability as the CDC defendants' successors. (Doc. 71). Kramer also moved under Rule 60(b) for the Court to set aside its earlier ruling dismissing NADM with prejudice, saying he did not know of the transfer's full extent until he saw the contracts. (*Id.* at #1439–40). The Court takes each request in turn.

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). It provides a procedural tool and does not typically impact the parties' substantive rights. *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72–73 (3d Cir. 1993). The Rule turns on the transferor having transferred away, at least to some extent, a relevant litigation interest. *See Maldonado v. Valsyn S.A.*, 434 F.

2

Supp. 2d 90, 91–92 (D.P.R. 2006) (allowing a plaintiff to continue litigation against a transferee after the defendant transferred away the litigation's target). In other words, it assumes that transferor "no longer maintains the same interest in the outcome" as the transferee. *McMoran Oil & Gas Co. v. KN Energy, Inc.*, 907 F.2d 1022, 1025 (10th Cir. 1990), *rev'd on other grounds by Freeport-McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991).

As Rule 25(c) is only procedural, the Court must next locate the substantive law that governs whether an entity has indeed transferred a litigation interest. Kramer maintains the CDC defendants contractually transferred away liability through the Asset Purchase Agreement, so the doctrine of successor liability appears to be the best candidate here. As for what law would govern such successor liability, Kramer, NADM, and PDA all converge, though without much discussion, on Ohio. (Doc. 71, #1452–53; Doc. 77, #1526). And the Court sees at least some reasons to conclude that is right. First, the Agreement states Ohio law will govern any litigation relating to it. (Doc. 87-1, #2121). Moreover, under Ohio's choice of law rules, Ohio law governs because the parties appear to have executed the contracts in Ohio. *See Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Thus, as no one has argued to the contrary, the Court applies Ohio successor-liability law.[2]

---

[2] The False Claims Act itself says nothing about successor liability. But as the False Claims Act is federal law, one could perhaps argue that federal common law should govern that issue. *See, e.g.*, *United State ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 709 (N.D. Ill. 2012) (applying federal common law to determine successor liability in a False Claims Act case). That said, the United States Supreme Court has suggested that courts should create federal common law only in very limited circumstances. *See Atherton v. FDIC*, 519 U.S. 213, 218 (1997). And, generally, courts should not do so absent a conflict between a relevant federal interest and state substantive law. *See Mickowski v. Visi-Trak Worldwide,*

Under Ohio law, "[t]he well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *WRK Rarities, LLC v. United States*, 165 F. Supp. 3d 631, 637 (N.D. Ohio 2016) (quoting *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993)). This includes a seller's tort and fraud liability. *See Buckholz v. First Fed. Sav. Bank*, 657 N.E.2d 346, 347–48 (Ohio Ct. App. 1995); *Flaugher v. Cone Automatic Mach. Co.*, 507 N.E.2d 331, 336 (Ohio 1987). Four limited exceptions exist: "(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability."[3] *Welco Indus.*, 617 N.E.2d at 1132.

Now apply that framework to the facts set forth in Kramer's Motion. As noted, under Ohio law, successor liability turns largely on the transaction's structure. Here, the Asset Purchase Agreement, Transition Services Agreement, and Transition Professional Services Agreement memorialized the relevant transfer.[4] (Docs. 87-1, 87-2, 87-3). Kramer argues these agreements show the CDC defendants, by selling

---

*LLC*, 415 F.3d 501, 512–13 (6th Cir. 2005). Here, no party suggests that federal common law governs, let alone articulates any relevant federal interest or conflict with Ohio law.

[3] True, some have suggested the general *Welco* successor liability rules do not apply in cases involving federal interests, like labor and civil rights. *Buckholz*, 657 N.E. 2d at 347–48. But as noted elsewhere, the Court declines to break new ground on federal successor liability.

[4] These agreements have been filed under seal with the Court. (Opinion, Doc. 85). Given the limited nature of this Order, the Court discusses the contracts in general terms and only describes clauses where necessary.

4

their assets, also transferred their liabilities (i.e., the "interest" that is the subject of this litigation) to NADM and PDA. (Doc. 71, #1436–37). And he says Rule 25(c) allows him to bring the latter two into (or in NADM's case, back into) this litigation to be held accountable for those false claims. (*Id.*).

Kramer is mistaken. Rule 25(c) has no bearing because, under Ohio law, the liabilities, and so the litigation interest, did not change hands. *See Welco*, 617 N.E.2d at 1132. NADM and PDA did not expressly or impliedly assume the CDC defendants' liabilities. Just the opposite. The Asset Purchase Agreement explicitly says the CDC defendants *did not* transfer their own pre-closing liability. (Doc. 87-1, #2087–88). In other words, the selling entities "maintained the same interest" in this case's outcome (at least as to pre-closing conduct) as they held before the sale. *McMoran Oil & Gas*, 907 F.2d at 1025. Granted, NAMD and PDA expressly accepted liability for conduct *following* the closing. (Doc. 87-1, #2087–88). Perhaps, then, NAMD and PDA directly incurred liability for post-closing false claims. Perhaps not. But as for a "transfer," the Agreement is clear—assets changed hands, liabilities did not.

The other *Welco* factors follow the same path. No party alleges a merger or consolidation occurred. NAMD and PDA cannot be considered "mere continuations" of the CDC defendants; NAMD and PDA and the CDC defendants evidently conducted a good-faith, arm's-length transaction and have different owners. *See WRK Rarities*, 165 F. Supp. 3d at 637 (finding the mere continuation doctrine inapplicable "when the asset transfer occurs at arm's length between entities with different owners"). And the Court detects no fraudulent intent in the transaction. After all, this

5

litigation remained under seal for almost a year after the closing. (*See* Doc. 17; Doc. 87-1, #2073).

In sum, under Ohio's successor liability doctrine, no relevant transfer occurred. Rather, accepting Kramer's allegations at face value, he may hold the CDC defendants liable for pre-closing false claims and hold NADM and PDA liable for post-closing false claims. Rule 25(c) adds nothing to the mix.

That leaves Rule 60(b). That Rule allows a Court to "relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). After receiving the contracts, Kramer claims surprise and argues that principles of justice warrant the Court to revisit its prior Opinion dismissing NADM with prejudice. (Doc. 71, #1459). Not so. After denying Kramer's Rule 25(c) Motion, the Court has no basis to "relieve" anything. The Court held that Kramer's operative Complaint did not state a plausible claim against NADM. (Doc. 67, #1397–98). Kramer has not sought leave to amend, so his operative Complaint (the same Complaint as before) remains equally deficient now as then. And of course, that Complaint contains zero allegations against PDA. The Court denies Kramer's request under Rule 60(b).

To be sure, Kramer presents evidence in his motion that may support a motion for reconsideration coupled with a renewed motion to amend his Complaint. Should he so move, the Court will consider those requests at that time. But as things stand, the Court cannot grant Kramer his requested relief under either Rule 25(c) or Rule 60(b). The Court **DENIES** Kramer's Motion to Join Parties (Doc. 71).

6

**SO ORDERED.**

June 20, 2023
**DATE**                                              **DOUGLAS R. COLE**
                                                       **UNITED STATES DISTRICT JUDGE**