UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA *ex rel.*
JOHN N. KRAMER,**

      **Plaintiff,**         Case No. 1:18-cv-373

   v.        **JUDGE DOUGLAS R. COLE**

**ROBERT A. DOYLE, JR.,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This case, about dentists who allegedly billed Medicaid for medically unnecessary procedures, has a long history.[1] It is now before the Court on three motions. The first is Plaintiff-Relator John N. Kramer's motion seeking leave to file a fourth amended complaint. (Doc. 90). The proposed Fourth Amended Complaint (Doc. 90-2) adds various allegations against North American Dental Management, LLC, (NADM), and Professional Dental Alliance, LLC, (PDA). (Doc. 90, #2250). So as part of his Motion for Leave to Amend, Kramer also moves the Court to reconsider its earlier dismissal of NADM, (Doc. 67, #1397–98)—the second motion now before the Court. (Doc. 90, #2250). Finally, NADM and PDA seek leave to file a surreply to Kramer's reply on that combined motion. (Doc. 95). For the reasons discussed below, the Court **DENIES** both the Motion for Leave to File Fourth Amended Complaint and the Motion for Reconsideration of NADM's Dismissal (Doc. 90). Accordingly, it

---

[1] The Court recounts the lengthy background only briefly here. For a more complete account, see the Court's first Opinion and Order. (Doc. 67, #1363–69).

also **DENIES AS MOOT** the Opposed Motion for Leave to File Surreply Brief, Instanter (Doc. 95).

## BACKGROUND

Kramer believes certain dentists in eastern Ohio performed medically unnecessary dental procedures and billed those procedures to Medicaid. He brought a qui tam action alleging as much against multiple defendants, including Complete Dental Care (CDC) Martins Ferry, LLC, and CDC Steubenville, LLC, (together, CDC Defendants), under the False Claims Act (FCA). (*See generally* Compl., Doc. 1). On November 14, 2018, after this litigation began, but before the Court unsealed the matter, the CDC Defendants sold their dental practices to NADM and PDA.[2] (Doc. 87-1, #2073). After Kramer learned of NADM's role, he amended his Complaint to include it. (3d Am. Compl., Doc. 37).

All of the then-Defendants, including North American Dental Group (NADG), NADM's corporate parent, (*see* Docs. 30, 46), NADM, and the CDC Defendants, moved to dismiss the Third Amended Complaint. (Docs. 48, 49). The Court granted in part and denied in part the CDC Defendants' motion. (Doc. 67, #1403). And it granted NADG and NADM's motion. (*Id.*). In brief, the Court found that Kramer had plausibly alleged CDC Defendants submitted false claims. (*Id.* at #1388–90). But he had not plausibly alleged the same for NADM and NADG. (*Id.* at #1397–98). So the Court dismissed all claims against them and with prejudice because it was Kramer's third

---

[2] Kramer filed his Complaint under seal on May 31, 2018. (Doc. 1). The sale occurred November 14, 2018. (Doc. 87-1, #2073). The Court unsealed the case on September 12, 2019. (Doc. 17). Defendants moved to dismiss three months later. (Doc. 48).

crack at alleging a claim against those defendants. (*Id.* at #1403). Discovery commenced.

Kramer then sought once again to join NADM and also to join (for the first time) PDA. (Doc. 71). He argued that discovery produced sale contracts proving that NADM and PDA bear liability for CDC Defendants' false claims. (*Id.* at #1451–55). So he moved under Federal Rule of Civil Procedure 25(c) to assert claims against NADM and PDA, arguing they bear liability as CDC Defendants' successors in interest. (*Id.*). Kramer also moved under Rule 60(b) for the Court to set aside its earlier ruling dismissing NADM with prejudice, in which motion he argued he did not know of the transfer's full extent until he saw the contracts. (*Id.* at #1455–56). The Court was not persuaded by either argument. (Op. and Order, Doc. 89, #2247–48). But it noted that it would consider a motion for reconsideration coupled with a renewed motion to amend Kramer's Complaint, should he so move. (*Id.* at #2248).

Kramer has now moved for leave to file a Fourth Amended Complaint. He seeks to add various allegations against NADM and PDA, which he claims he has done "[i]n accordance with the Court's Order." (Doc. 90, #2251). More specifically, Kramer seeks to add allegations about NADM and PDA's purchase of CDC and three example patients already in the Third Amended Complaint—Patients Five, Six, and Seven, as well as twelve new example patients—Patients Nine through Twenty. (Doc. 90-1 ¶¶ 224–25, 242–44, 263–65, 286–365, #2327, 2331–32, 2335–36, 2340–56).

NADM, PDA, and CDC Defendants opposed. NADM and PDA argue, in part, that amendment would be futile, and that Kramer has repeatedly failed to cure his

3

pleading deficiencies through amendment. (Doc. 92, #2470–84). So they say reconsideration is unwarranted. (*Id.* at #2484). CDC Defendants make similar arguments. First, they say Kramer has not pleaded sufficient factual allegations to support claims against NADM and PDA. (Doc. 93, #2488–91). Second, they say Kramer has failed to meet the standard for reconsideration of an interlocutory order. (*Id.* at #2491–94). Finally, they say the Court should deny Kramer leave to amend for repeated failure to cure deficiencies. (*Id.* at #2494–96).

Kramer replied. (Doc. 94). He argues, among other things, that (1) the Court's prior Order established that he can state a plausible claim against NADM and PDA for post-closing claims; (2) his proposed amendments are not futile; and (3) NADM and PDA are responsible for the false claims associated with Patients Five, Six, and Seven. (*Id.* at #2499–2506).

Finally, NADM and PDA sought leave to file a surreply. (Doc. 95). They say Kramer misrepresented both the Court's previous Opinion and Order and the effects of his proposed amendments, so they are entitled to file a surreply. (*Id.* at #2509–11). Kramer disagrees on both fronts. (Doc. 96, #2518–20). In the more than three months since Kramer responded, neither NADM nor PDA has replied. So the Court treats the motion as ripe. *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 935 n.4 (6th Cir. 2004) ("[I]t appears that [the movants] never filed a reply in support of [their] motion to [file a surreply]. Accordingly, the motion became ripe … when the time for filing a reply brief expired.").

4

**LEGAL STANDARD**

"[C]ourt[s] should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But when deciding whether to grant leave to amend, courts may consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (cleaned up); *see also Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002) ("[C]ourts may deny leave to amend when the amendment would be futile[.]"). The touchstone for assessing futility is whether the proposed amendment can survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* That means the complaint must allege sufficient facts, taken as true, to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* And a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under a viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)

5

(citation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

Because Kramer seeks reconsideration, the standard for such motions also comes into play. "Traditionally, courts will find justification for reconsidering interlocutory orders [only] when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or [to] prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Importantly, "[a] motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue." *Breeders' Cup Ltd. v. Nuvei Techs., Inc.*, No. 5:19-cv-00113, 2023 WL 6135671, at *2 (E.D. Ky. Sept. 19, 2023).

## LAW AND ANALYSIS

Kramer's proposed amendments are futile, so the Court denies the Motion for Leave to Amend on that basis. *Dubuc*, 312 F.3d at 752. To start, he fails to sufficiently allege well-pleaded facts raising a plausible inference that NADM and PDA knowingly joined an existing scheme perpetrated by the CDC Defendants. Merely alleging, without supporting details, that NADM and PDA acted "in concert" to "continue[] the fraudulent scheme alleged in this Complaint," (Doc. 90-1 ¶¶ 286–309, #2340–43), is not enough. Such "[c]onclusory allegations … will not suffice." *Terry*, 604 F.3d at 276 (citation omitted).

6

Perhaps he instead means to allege a direct FCA action against NADM and PDA for claims they submitted after they purchased CDC Defendants' dental practices. But if so, Kramer needs to allege "at least one" representative false claim that NADM or PDA knowingly submitted or caused to be submitted once they took over those practices. *United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 196 (6th Cir. 2021) ("[U]nder Rule 9(b), the identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation." (cleaned up)); 31 U.S.C. § 3729(a)(1)(A) ("[A]ny person who—*knowingly* presents, or causes to be presented, a false or fraudulent claim for payment or approval … is liable to the United States Government[.]" (emphasis added)); *id.* § 3729(b)(1)(A) (defining "knowing" as "actual knowledge," "deliberate ignorance of the truth or falsity of the information," or "reckless disregard" for such truth); *see generally U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 640 (6th Cir. 2003). And none of his proposed amended allegations clear that hurdle.

Start with the allegations based on Patients Five through Seven. For each of those patients, the proposed Fourth Amended Complaint adds allegations that (1) NADM and PDA "owned and operated" the CDC practice where that patient received treatment at the time of treatment; (2) "the dentists who performed work on [the patient] were agents of" NADM and PDA; and (3) NADM and PDA "expressly assumed liability for treatment of [the patient] after the sale of" CDC. (Doc. 90-1 ¶¶ 224–25, 242, 244, 263, 265, #2327, 2331–32, 2335–36). It also alleges Patients Six

7

and Seven "executed a HIPAA/Privacy Notice and Financial Agreement with" PDA. (*Id.* ¶¶ 243, 264, #2331, 2335).

But none of those proposed amendments allege with particularity that NADM or PDA *knowingly submitted or caused the submission of* a specific false claim. As discussed briefly above, and more extensively in the Court's first Opinion and Order, a plaintiff must allege the knowing submission of at least one specific false claim by any given defendant to plead an FCA claim against that defendant. (Doc. 67, #1371–74, 1384). And mere ownership is not enough to give rise to an inference of knowledge. *See United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 199 (4th Cir. 2022) (holding that "bald and vague allegations that the corporate Defendants 'knowingly made, used, or caused to be made or used, a false record' for Taylor's medical care 'through their [shared] ownership and control' and 'direct or indirect contractual arrangements'" were not enough to plausibly allege a False Claims Act claim (cleaned up)); *cf. CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("[S]omething more must be shown than mere ownership of a machine used by others to make illegal copies … [T]he Copyright Act does not hold the owner of the copying machine liable as a direct infringer when its customer copies infringing material without knowledge of the owner[.]"). Compounding the problem, Kramer fails to provide sufficient details as to any claim submitted on behalf of these persons "reasonably to pluck out" those claims "from all the other claims they submitted" during the relevant time period. *Fazzi Assocs.*, 16 F.4th at 197. So Kramer's proposed

8

amendments related to Patients Five, Six, and Seven are insufficient to allege an FCA claim against NADM and PDA.

The allegations about Patients Nine and Ten also miss the mark. True, those patients received care after NADM and PDA bought CDC. And, as to Patient Nine, Kramer alleges a specific month in which that patient received treatment—July 2019. (Doc. 90-1 ¶¶ 311–14, #2344). But as to Patient Ten, all he says about time is that the treatment was sometime "after July 2019," and before Patient Ten received treatment from Kramer in July 2020. (*Id.* ¶¶ 315–18, #2344–45). And as to neither does he allege claim submission dates, claim amounts, or other details to "identify a representative false claim that was actually submitted to the government." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 470 (6th Cir. 2011). All he alleges is that those patients received medically unnecessary root canals. (Doc. 90-1 ¶¶ 311–18, #2344–45). Again, that falls short of what caselaw requires for the requisite representative false claim that is an indispensable element of an FCA claim. *Fazzi Assocs.*, 16 F.4th at 197.

Nor do the allegations relating to Patients Eleven through Twenty bridge this gap. He alleges only that each patient received care during a window ranging from two months to two years. (Doc. 90-1 ¶¶ 319, 323, 327, 331, 335, 339, 343, 347, 352, 356 #2345–54). And he does not provide additional details about specific claim submissions as to any of those patients. Again, that is nowhere near enough to allow NADM or PDA "reasonably to pluck out" those claims "from all the other claims they

9

submitted." *Fazzi Assocs.*, 16 F.4th at 197. So Kramer has not plausibly alleged a representative false claim related to Patients Eleven through Twenty, either.

Because Kramer fails to allege a representative false claim attributable to NADM or PDA, his claim against them fails out of the box. That, in turn, renders his request to amend to add FCA claims against NADM and PDA futile. *Terry*, 604 F.3d at 275–76 (citation omitted). Accordingly, the Court denies Kramer's Motion for Leave to File Fourth Amended Complaint (Doc. 90).

Further reinforcing that result, courts may consider the "repeated failure to cure deficiencies by previous amendments" when deciding whether to grant leave to amend. *Gen. Elec. Co.*, 916 F.2d at 1130. Kramer has repeatedly tried and failed to state a claim against NADG, NADM, and/or PDA. The First Amended Complaint (Doc. 11) and Second Amended Complaint (Doc. 14) both listed NADG as a Defendant. Then, after NADG moved to dismiss the Second Amended Complaint, (Doc. 31), Kramer filed his Third Amended Complaint, in which he added NADM as a Defendant, (Doc. 37). Next, after NADG and NADM moved to dismiss the Third Amended Complaint, (Doc. 49), Kramer again sought leave to amend, (Doc. 57). The Court then dismissed all claims against NADM and NADG with prejudice. (Doc. 67, #1403). After that, Kramer sought to join NADM and PDA as Defendants. (Doc. 71). When the Court also denied that motion, (Doc. 89), Kramer filed the motions now before the Court. In short, "a plaintiff is not entitled to unlimited chances to amend," *Gavaldon v. Stanchart Sec. Int'l, Inc.*, No. 16-cv-590, 2018 WL 1470244, at *2 (S.D. Cal. Mar. 26, 2018), and the Court is convinced that Kramer has "had more than

enough chances to craft plausible allegations," *Gerber v. Ohio N. Univ.*, No. 3:14-cv-2763, 2015 WL 1996252, at *15 (N.D. Ohio Apr. 30, 2015). So Kramer's repeated failure to allege plausible claims against NADM and PDA further supports denying Kramer's latest attempt to amend.

Next, the Court turns to Kramer's Motion for Reconsideration. Kramer seeks reconsideration based on his proposed new allegations—in other words, "new evidence." *Rodriguez*, 89 F. App'x at 959. But those new, insufficiently specific allegations do not justify reconsideration for the same reasons they do not justify amendment. And Kramer has neither shown an intervening change of controlling law nor otherwise persuaded the Court that its previous decision was in error. *Id.* So the Court denies the Motion for Reconsideration of NADM's Dismissal (Doc. 90).

That leaves only NADM and PDA's motion for leave to file surreply. Because the Court has denied both of Kramer's Motions, NADM and PDA's proposed surreply is moot. So the Court denies the motion as such.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** both Kramer's Motion for Leave to File Fourth Amended Complaint and Motion for Reconsideration of NADM's Dismissal (Doc. 90). It also **DENIES AS MOOT** the Opposed Motion for Leave to File Surreply Brief, Instanter (Doc. 95).

**SO ORDERED.**

March 22, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

11